Opinion
 

 NARES, J.
 

 Grayden N. appeals from that part of the juvenile court’s order, after true findings that he assaulted two victims with a deadly weapon (an automobile) in violation of Penal Code section 245, subdivision (a)(1),
 
 [1]
 
 which, as a condition of his probation, subjects Grayden to the mandatory revocation of his driver’s license pursuant to Vehicle Code
 
 [2]
 
 section 13351.5.
 
 [3]
 

 Grayden first urges (as he did in the trial court) that the statute does not apply to misdemeanors and the revocation of his driver’s license is contrary
 
 *601
 
 to the rehabilitative goals of the juvenile court law. Grayden also argues (but did
 
 not
 
 so argue in the trial court) he did not receive adequate notice of this “penalty" in the proceedings below. We disagree with these propositions, and affirm.
 

 [4]
 

 On the evening of July 10, 1995, Grayden and his girlfriend, Christina S., were driving on Mast Boulevard in Santee. Dennis K., Jason O. and Bobby L. were walking down Mast Boulevard in the opposite direction to a 7-Eleven store. Christina was formerly the girlfriend of Dennis. As Grayden drove by Dennis, Jason and Bobby, words were exchanged.
 

 Grayden made a U-turn and sped the automobile at Dennis and Jason (coming within a foot or two of them and causing them both to have to jump out of the way of Grayden’s vehicle), drove further, made another U-turn, and parked the car. Grayden then got out and approached Dennis while carrying a knife, which he then swung at Dennis. Dennis backed away while Jason and Bobby went to call the police.
 

 Grayden eventually returned to his car, drove around the block, and then drove his vehicle onto the sidewalk on which Dennis and Jason were walking. Dennis and Jason jumped over a fence to avoid being run down.
 

 Grayden pulled into the 7-Eleven parking lot, got out of his car, went to Dennis and Jason and said he was going to kill them, and swung at Dennis. Grayden and Christina then drove off, while Dennis and Jason remained until police arrived.
 

 When the deputy sheriff who responded to the 7-Eleven disturbance went to Grayden’s home two days later, Grayden’s mother asked him if there was something he had not told her. Grayden replied, “Yeah, I went after them with the car.”
 

 Procedure
 

 On July 14, 1995, the District Attorney of San Diego County filed a petition in juvenile court alleging Grayden came within the jurisdiction of
 
 *602
 
 that court under Welfare and Institutions Code section 602, in that he had committed two assaults with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1), charged as felonies, and had exhibited a weapon in violation of Penal Code section 417, subdivision (a)(1), a misdemeanor.
 

 On July 17, 1995, Grayden appeared, had counsel appointed, and denied the allegations of the petition. Despite the vigorous contest to the allegations mounted by Grayden over the course of a three-day trial (in which Grayden portrayed himself as having to “stand up” to the jeers of Dennis and Jason, denied having intended to threaten them with the automobile, and claimed the knife he wielded had been a toy) the court sustained the petition on October 24, 1995, as to all three offenses.
 

 While the court found it true beyond a reasonable doubt that Grayden had committed the two charged assaults with a deadly weapon (as well as the brandishing charge), the court nonetheless declared the assaults to be misdemeanors, stating the offense in the court’s view did “not rise to the dignity of a felony just because these other kids were involved and they were egging each other on.” The court thereafter set Grayden’s maximum term of confinement at 18 months.
 

 The probation officer’s social study recommended Grayden be placed on probation on condition (among others) his driving privilege be revoked pursuant to section 13351.5. On December 4, 1995, Grayden was adjudged a ward and was placed on probation, and the court made a true finding an automobile had been used in the commission of the first offense, while the issue of the revocation of Grayden’s driver’s license was taken under submission.
 

 On December 5, 1995, a referee determined Grayden’s driver’s license should be revoked pursuant to section 13351.5, although the recommendation erroneously noted the court had found “a motor vehicle was used in the commission of a
 
 felony”
 
 On February 5, 1996, a notice of appeal was filed on Grayden’s behalf, asserting that “[t]he court orders show [driver’s license] revocation because of the commission of a felony. Grayden was found in violation of misdemeanors.”
 

 Discussion
 

 I
 

 Applicability of Section 13351.5
 

 Grayden first argues that section 13351.5, as enacted in 1994, by its own terms “does not state whether [it] applies to both felonies and misdemeanors” and thus should not be applied herein. Grayden goes on to argue
 
 *603
 
 that “the [juvenile] court is not required to apply Vehicle Code Section 13351.5, nor is it within its jurisdiction to do so, because permanent revocation exceeds the jurisdiction of the juvenile court.” We disagree with these assertions.
 
 [5]
 

 To begin with, section 13351.5, as noted above, requires the Department of Motor Vehicles to revoke the driving privilege of anyone who is “a person . . . convicted of a violation of Section 245 of the Penal Code, and a vehicle was found by the court to constitute the deadly weapon . . . .” A juvenile court true finding is a “conviction” for purposes of the section’s application. (§ 13105.
 
 [6]
 
 ) Thus, as the terms are used in the statute, Grayden has been “convicted” of a violation of Penal Code section 245 in which the deadly weapon he used was an automobile.
 

 To now argue the Legislature intended section 13351.5 to apply only in felony cases ignores the facts that (a) Penal Code section 245 defines an
 
 offense
 
 which can be
 
 punished
 
 either as a felony or a misdemeanor, and (b) the plain words of section 13351.5 (as the trial judge noted while referring the question to a referee) refer to the
 
 offense
 
 itself, without any distinction being drawn as to the character of the punishment in a particular case.
 

 As our Supreme Court has stated: “ ‘[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.’ [Citation.] In determining that intent, we first examine the words of the respective statutes: ‘If there is no ambiguity in the language of the statute, “then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.” [Citation.] “Where the statute is clear, courts will not ‘interpret away clear language in favor of an ambiguity that does not exist.’ [Citation.]” ’ [Citation.]”
 
 (People
 
 v.
 
 Coronado
 
 (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) In other words, had the Legislature intended section 13351.5 to apply to felony cases only, it could have said so. As it did not, the plain words of the statute itself invoke the revocation procedure in
 
 every
 
 violation of Penal Code section 245 committed by use of an automobile as a deadly weapon, without reference to the character of the punishment in a particular case, and further without differentiating between adjudications in adult criminal trials or juvenile delinquency proceedings. We thus may not here “interpret away clear language in favor of an ambiguity that does not exist,” and for this reason, we
 
 *604
 
 reject Grayden’s argument section 13351.5 does not apply to misdemeanor convictions.
 
 [7]
 

 Grayden next argues section 13351.5 is contrary to the rehabilitative goals of the juvenile court law, and application of the statute is beyond the jurisdiction of the juvenile court because the effects of the revocation may last past the time Grayden has attained the age of 21 years. Not so.
 

 Simply put, the juvenile court is bound, under the statute, to report to the Department of Motor Vehicles the true finding Grayden committed an assault with a deadly weapon in violation of Penal Code section 245, subdivision (a), and the true finding the weapon which Grayden used was a vehicle. (§ 13351.5.)
 

 It is the Department of Motor Vehicles, however, not the court, which revokes the driver’s license. Thus there is no question of the juvenile court’s jurisdiction here involved. As our Supreme Court has noted: “We explained [in
 
 Thomas
 
 v.
 
 Department of Motor Vehicles
 
 (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858],] that the act of the DMV in suspending a driver’s license ... is merely an ‘administrative act in performing a mandatory function’ [citation], and that the DMV, having received abstracts of judgments for the driver’s two prior convictions of driving under the influence, simply was required to suspend his driving privilege . . . .”
 
 (Larsen
 
 v.
 
 Department of Motor Vehicles
 
 (1995) 12 Cal.4th 278, 284 [48 Cal.Rptr.2d 151, 906 P.2d 1306].)
 

 Because the matter at issue is an instance wherein Grayden’s “conviction” has “consequences outside the criminal context” (12 Cal.4th at p. 283), rather than any question involving the jurisdiction of the juvenile court, we thus reject Grayden’s challenge to the application of section 13351.5 in this case.
 
 [8]
 

 
 *605
 
 II
 

 Due Process
 

 Grayden last argues he did not receive proper “notice of the penalty” which was to be imposed upon him in the petition itself, and thus his subsequent driver’s license revocation violates due process. We disagree.
 

 We note first that Grayden’s due process claim of inadequate notice has been waived by the failure to raise it below.
 
 (People
 
 v.
 
 Garceau
 
 (1993) 6 Cal.4th 140, 204-205 [24 Cal.Rptr.2d 664, 862 P.2d 664].) We next observe that, were the point reviewable, it would in any event be meritless.
 

 In another context, a defendant argued an administrative suspension of his driver’s license violated due process:
 

 “[Defendant] contends the imposition of an administrative licensure suspension as well as a criminal licensure suspension violates ... his due process rights.
 

 “Penal Code section 15 defines ’punishments’ or penal sanctions as:
 

 “ ‘A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments:
 

 “‘1. Death;
 

 “ ‘2. Imprisonment;
 

 “‘3. Fine;
 

 “ ‘4. Removal from office; or
 

 “ ‘5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State.’
 

 “A license suspension is not among the punishments listed in Penal Code section 15 and thus is not a penal sanction . . . .”
 
 (Fearn
 
 v.
 
 Zolin
 
 (1992) 9 Cal.App.4th 1756, 1761-1762 [12 Cal.Rptr.2d 314].)
 

 While the petition herein did not specify that one of the possible consequences of a true finding would be Grayden’s loss of his driver’s license, no
 
 *606
 
 such allegation was required. In
 
 Pollack
 
 v.
 
 Department of Motor Vehicles
 
 (1985) 38 Cal.3d 367 [211 Cal.Rptr. 748, 696 P.2d 141], it was contended the failure of the prosecution to plead that a drunk driver had a prior conviction precluded the Department of Motor Vehicles from revoking his driver’s license as a second offender.
 
 (Id.
 
 at p. 373.) The Supreme Court disagreed, holding the relevant Vehicle Code sections were enacted for the “protection of the public from drivers whose prior conduct demonstrates they cannot currently be trusted with a license to drive. That concern would not be served by an interpretation of the statute which makes public protection dependent upon whether a prosecutor . . . chooses to plead and prove the prior offense.”
 
 (Id.
 
 at pp. 380-381; see also the discussion in
 
 Baldwin
 
 v.
 
 Department of Motor Vehicles
 
 (1995) 35 Cal.App.4th 1630, 1633-1642 [42 Cal.Rptr.2d 422].)
 

 The social study, as noted above, did inform Grayden that application of section 13351.5 was recommended. Under the cases noted above, no more formal notice was or is required in the case of a collateral administrative procedure such as is mandated by section 13351.5, and we thus reject Grayden’s assertions of error in this respect.
 

 Disposition
 

 The juvenile court order is affirmed.
 

 Benke, Acting P. J., and Huffman, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 Penal Code section 245, subdivision (a)(1) is a “wobbler” punishable either as a felony or a misdemeanor. The offenses here were declared misdemeanors.
 

 [2]
 

 Subsequent statutory references are to the Vehicle Code unless otherwise specified.
 

 [3]
 

 Section 13351.5 provides in its entirety as follows: “(a) Upon receipt of a duly certified abstract of the record of any court showing that a person has been convicted of a violation of Section 245 of the Penal Code, and a vehicle was
 
 *601
 
 found by the court to constitute the deadly weapon or instrument used to commit that offense, the department immediately shall revoke the privilege of that person to drive a motor vehicle. “(b) The department shall not reinstate a privilege revoked under subdivision (a) under any circumstances.”
 

 [4]
 

 There is no challenge whatsoever to the sufficiency of the evidence to support the true findings Grayden used an automobile in the commission of an assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1). Accordingly, we abbreviate our recitation of the underlying facts.
 

 [5]
 

 While both parties refer us to the legislative history of the statute, because we find that the words of the statute are clear, we do not resort to the legislative history.
 
 (Lennane
 
 v.
 
 Franchise Tax Bd.
 
 (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)
 

 [6]
 

 Section 13105 provides in pertinent part that “ ‘conviction’ includes a finding by a judge of a juvenile court. . . .”
 

 [7]
 

 In his reply brief, Grayden also argues section 13351.5 should not be applied because it “results in an administrative action which far exceeds misdemeanor punishment.” As we have found the statute clearly applies to these particular offenses, whether they are punished as misdemeanors or felonies, and because administrative actions such as the driver’s license revocation here at issue are not in any event “punishment” (see discussion in pt. II,
 
 post),
 
 we do not accept the argument.
 

 [8]
 

 In his reply brief, Grayden suggests the probation condition requiring revocation of his driver’s license in compliance with section 13351.5 was “based on the court’s wrongful assumption that the minor used a motor vehicle in the commission of a felony.” While we do not agree the court’s order was “based” on any such erroneous view of the status of the offenses before it, because the statute applies in either case we do not further discuss the matter.