Filed 4/22/13  P. v. Gueyger CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERNESTO JOAQUIN GUEYGER et al.,<br><br>Defendants and Appellants. | C067862<br><br>(Super. Ct. Nos. 10F03226, 10F03260 & 10F03449) |

Defendants Ernesto Gueyger and Rudy Ponce, along with Sergio Bravo,[1] stole cigarettes and snacks from a 7-Eleven store. A jury found Gueyger and Ponce guilty of commercial burglary (Pen. Code,[2] § 459), and petty theft with a prior (§ 666). Gueyger was the getaway driver; he led police on a high-speed

---

[1]  Bravo is not a party to this appeal.  He was tried before a separate jury and found guilty of commercial burglary and theft, but, like Ponce, acquitted of robbery.

[2]  Further undesignated statutory references are to the Penal Code.

1

chase, rammed a patrol car, and fled again before the police apprehended him. In addition to the burglary and theft charges, Gueyger was also found guilty of robbery (§ 211), being an accessory after the fact (§ 32), recklessly evading the police (Veh. Code, § 2800.2), and assault with a deadly weapon (his car) on a peace officer (§ 245, subd. (c)). Ponce had also participated in the robbery of a different 7-Eleven store two days before. As to that incident, the jury found him guilty of robbery (§ 211) and petty theft with a prior (§ 666).

Gueyger and Ponce contend their convictions for petty theft with a prior (§ 666) must be reduced to misdemeanor theft because a section 666 conviction now requires three prior theft-related convictions, which neither defendant has suffered. Further, they contend they did not personally waive jury on the priors. The People concede that under a new amendment to section 666, which is retroactive, the section 666 convictions cannot stand and must be reduced to misdemeanor theft.

Gueyger further contends, and the People concede, that he cannot be convicted of robbery *and* being an accessory after the fact for simply driving away after the robbery, and that the abstracts of judgment must be corrected to show that credits were awarded pursuant to section 2933.1 rather than section 4019. As we will explain, we agree with the parties on these points.

Gueyger also argues that section 654 bars a separate sentence on reckless evading because it was part of a continuous course of conduct, with the same intent and objective, as the

2

assault.  Although the People do not agree with Gueyger on this point, we do.  Finally, we construe the notation on the abstract of judgment that Gueyger's driver's license was suspended for life to be acknowledgement that his license will be revoked by the Department of Motor Vehicles pursuant to Vehicle Code section 13351.5 because he used a motor vehicle as a deadly weapon in the felony assault and we remand for the trial court to add this explicit finding to the abstract of judgment.

**FACTS**

*May 7, 2010 Crimes*

On May 7, 2010, Ponce and another, much shorter,[3] man entered a 7-Eleven store at El Camino and Northgate shortly before 4:00 a.m.  They wanted to buy beer, but the clerk refused to sell it to them because it was after 2:00 a.m.  The shorter man held his fist under his shirt at his waist and said he "got something."  The clerk feared he had a weapon.  The two men grabbed three cases of beer and ran off.  Ponce returned and grabbed cigarettes.

*May 9, 2010 Crimes*

On May 9, 2010, at about 3:40 a.m., Ponce and Bravo entered a 7-Eleven store in Rio Linda.  Gueyger was in a Jeep Cherokee waiting outside.  Ponce asked for cigarettes.  The clerk claimed

---

[3]  Gueyger was initially charged as the second robber.  After an enhancement of the store video showed the height differential between Ponce and the other robber was too great for the second robber to be Gueyger, the trial court granted Gueyger's motion for acquittal pursuant to section 1118.1 as to counts 9 and 10. Only Ponce was found guilty of the May 7 robbery.

3

Ponce pulled out a knife. Ponce and Bravo ran out with cigarettes, soda, and snacks (counts 1, 2, 3 and 5).

Sacramento County Sheriff's Department Deputies Greg Steindorf and Dennis Peyton responded to an aborted 911 call from the store. When they reached the store, the clerk had run into the street and was pointing down the street. The deputies saw the tail lights of a vehicle moving away and accelerated to catch up. They followed a Jeep Cherokee with no rear license plate. When the Jeep turned left against a light, the deputies activated their lights and siren.

The Jeep moved towards the right shoulder as if to pull over, but it continued into a residential neighborhood. The Jeep was traveling 50 miles per hour where the speed limit was only 25; it swerved and failed to stay within its lane (count 6). It then went out of control, hit a parked car and continued into a fence, bounced onto the curb, and stopped. The passenger doors opened and the suspects fled. Steindorf followed the fleeing suspects and caught Ponce (count 7).

While Peyton was still in the driver's seat of the patrol car, Gueyger backed up the Jeep and rammed the patrol car; Peyton felt the impact. Peyton heard the Jeep still accelerating; Gueyger was still trying to maneuver the Jeep from where it was "boxed in." Peyton got out of the patrol car and approached the front passenger side of the Jeep. He struck the window with his flashlight three times before it broke. Peyton leaned into the Jeep just past his shoulder and pointed his gun at Gueyger, telling him to stop the car or Peyton would kill

4

him.  Instead, Peyton felt the Jeep begin to accelerate and knew he had to get out or he would be dragged, possibly under the car.  He got out of the way immediately and radioed for assistance (count 8).  Another deputy found Gueyger three or four blocks away, covered in weeds.

**DISCUSSION**

I

*Reduction of Felony Petty Theft with a Prior (§ 666)*

*to Misdemeanor Theft (§ 484)*

Both Gueyger and Ponce contend their convictions for petty theft with a prior must be reduced to misdemeanor theft because section 666 now requires three prior theft-related convictions and Gueyger has only two and Ponce one.  The People concede that the change in the law is retroactive and defendants are legally entitled to the benefit of the change.

*A.    The Law*

At the time Gueyger and Ponce committed the present offenses, section 666 provided:

"Every person who, having been convicted of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison."

Effective September 9, 2010,[4] Assembly Bill No. 1844 (2009–2010 Reg. Sess.), the Chelsea King Child Predator Prevention Act of 2010 (the Act), amended section 666 to provide, in pertinent part:

"(a) Notwithstanding Section 490 [specifying the punishment for petty theft], every person who, having been convicted three or more times of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison."[5]  (Italics added.)

In *People v. Vinson* (2011) 193 Cal.App.4th 1190 (*Vinson*), the court considered whether the amendment to section 666 was retroactive.  The court followed *In re Estrada* (1965) 63 Cal.2d 740, 748, which held, "where the amendatory statute mitigates

---

[4]  We note that the amendment to section 666 became effective almost a month *before* the People filed the information in this case on October 5, 2010.

[5]  New subdivision (b) of section 666 provides for imprisonment in the county jail or state prison upon conviction of petty theft with one prior theft-related conviction and period of incarceration for persons who are required to register as sex offenders or who have suffered a prior violent or serious felony conviction under the three strikes law.

punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." The *Vinson* court reasoned that the amendment to section 666 "had the effect of mitigating punishment by raising the level of recidivism required before a defendant can be sentenced to state prison." (*Vinson*, *supra*, 193 Cal.App.4th at p. 1199.) Applying the amendment retroactively was also consistent with the legislative intent in passing the Act "to save money and space in order to partially offset the higher costs and inmate population occasioned by increasing sentences for sexual predators." (*Vinson*, *supra,* at p. 1199.) The court explained: "In light of the concerns expressed in the legislative history about prison overcrowding and the costs associated with the act, and the fact the cost avoidance achieved by shifting some nonviolent, non-sex-offender recidivists to the county correctional level will not completely offset the new costs [citation], it would make no sense to conclude the section 666 amendment should apply only concurrently with the remaining provisions of the act, i.e., prospectively." (*Ibid*.)

   *B.    Analysis*

   We find *Vinson* persuasive as to the retroactive effect of the amendment to section 666. Therefore, we agree with the parties that Gueyger and Ponce are entitled to the mitigating effects of the amendment to section 666. The information alleged Gueyger had suffered two theft-related priors, petty theft and vehicle theft, and served a term for each, while Ponce

7

had suffered only one theft-related prior, grand theft, and had served a term for it.[6]  The court found these allegations true.

Since neither defendant had suffered three theft-related priors as now required by section 666, their convictions for that offense cannot stand.  We shall modify the judgment to reduce count 2 for Gueyger and counts 3 and 11 for Ponce to misdemeanor theft (§ 484).  (See *People v. Cortez* (1994) 24 Cal.App.4th 510 [reducing conviction for section 666 to section 484 where no evidence defendant served a term in a penal institution as required by section 666].)

Since we are reducing defendants' section 666 convictions to misdemeanor theft, we need not address their contention that such a reduction is required because the trial court failed to take personal waivers of the right to a jury on the allegations of the theft-related priors.[7]

## II

### *Accessory After the Fact*

Gueyger contends he cannot be convicted of both robbery and being an accessory after the fact because the latter charge is based on the facts constituting part of the robbery, driving

---

[6]  The probation report indicates Gueyger sustained a juvenile adjudication for robbery, which would make him chargeable under section 666, subdivision (b).  However, this prior adjudication was neither alleged nor found true.

[7]  A personal waiver is, however, required.  (See Cal. Const., art. I, § 16.)

away from the location of the robbery.  He contends count 6 must be reversed.  The People concede error and we agree.

A.    *The Law*

California law is divided over whether a person can be convicted as both a principal and an accessory to the same felony.  (*In re Eduardo M.* (2006) 140 Cal.App.4th 1351, 1358 (*Eduardo M.*).)  Here, as in *Eduardo M.*, we need not resolve the conflict in order to arrive at our holding.

In *Eduardo M.*, a minor who had aided and abetted assaults was convicted both as a principal and as an accessory based on his flight after the crime.  The appellate court found it unnecessary to resolve the conflict over whether conviction as both a principal and an accessory was proper, holding "only that a defendant who is convicted as a principal cannot also be convicted as an accessory solely on the basis of his immediate flight from the crime scene and his subsequent denials of his own involvement, even if that conduct incidentally helps other principals to escape."  (*Eduardo M., supra,* 140 Cal.App.4th at p. 1359.)  The court reasoned, "Nearly all felons, whether acting alone or in concert with others, intend before, during, and after committing the felony to escape being apprehended and punished for their crimes.  Attempting to escape after committing a felony is an inherent part of committing the felony, involving in most cases acting on a previously formed intent.  Thus, escaping does not create greater criminal culpability.  Indeed, although Penal Code section 32 does not expressly so state, California long has recognized that a

9

principal to a felony cannot become an accessory to that felony by attempting to make his own escape.  [Citations.]"  (*Eduardo M., supra,* at p. 1360.)

"If a felon cannot be subjected to additional liability as an accessory for fleeing and denying his guilt, then the same rule should apply to a principal whose flight and denials have the incidental effect of helping a coprincipal to escape. Unlike when third persons who are not principals to a felony intentionally aid the felon's escape after the crime is completed, a principal who flees and thereby incidentally assists another principal in escaping does not thereby expand the circle of criminality beyond the original participants. Moreover, because immediate flight and denials of involvement are such ubiquitous features of criminal conduct, they are too equivocal to constitute separate *acts* supporting an inference that the fleeing and guilt-denying felon harbored a separate *intent* to aid the escape of his coprincipals.  For a principal to be convicted as an accessory, which requires both separate acts and intent, the principal must do something more than flee and deny his own guilt."  (*Eduardo M., supra,* 140 Cal.App.4th at p. 1361.)

*B.  Analysis*

Here, Gueyger fled in the Jeep with Ponce and the others immediately after the robbery at the 7-Eleven store.  There is no evidence of any other act that would support an accessory charge.  Under *Eduardo M.,* with which we agree, Gueyger's accessory conviction must be reversed.

10

III

*Section 654*

Gueyger contends his sentence on reckless evasion of the police, count 7, must be stayed under section 654 because both the evading and the assault on a peace officer arose from the same continuous course of conduct and had the same criminal intent and objective--to get away.  We agree.

*A.   The Law*

Section 654 provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"The 'act' necessary to invoke section 654 need not be an act in the ordinary sense of a separate, identifiable, physical incident, but may instead be a 'course of conduct' or series of acts violating more than one statute and comprising an indivisible transaction punishable under more than one statute. [¶]  The divisibility of a course of conduct depends upon the intent and objective of the defendant.  If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one.  On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were

11

parts of an otherwise indivisible course of conduct. [Citations.] The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. [Citations.]" (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.)

There is an exception to section 654 where there are multiple victims of violent crimes. "[S]ection 654 does not apply to crimes of violence against multiple victims." (*People v. King* (1993) 5 Cal.4th 59, 78.) As the purpose of section 654 "is to insure that the defendant's punishment will be commensurate with his criminal liability," when he "commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654. (*Neal v. State of California* (1960) 55 Cal.2d 11, 20—21, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331.) "A defendant may properly be convicted of multiple counts for multiple victims of a single criminal act only where the act prohibited by the statute is centrally an 'act of violence against the person.' [Citation.]" (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 351.)

"'"A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." [Citation.]' [Citation.]" (*People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1310.)

12

*B.   Analysis*

Here, the trial court did not make express findings with respect to the application of section 654.  (See Cal. Rules of Court, rule 4.424.)  The issue of section 654 did not arise at sentencing with respect to the evading and assault charges. We consider whether there is substantial evidence to support an implied finding of a separate intent and objective.

The evidence supports Gueyger's position that he harbored the same intent and objective during both the evading and the assault.  Deputy Peyton testified that after the Jeep temporarily stopped on the curb, immediately before it rammed the patrol car and then took off with Peyton still partially inside,[8] he heard the Jeep accelerating.  Peyton testified Gueyger was consistently trying to maneuver the vehicle to get away.  There was no evidence that Gueyger stopped trying to get away *in order to harm Peyton*; the only evidence was that Gueyger was trying to get away the entire time.

The People do not offer a separate intent and objective for the assault.  Rather, they argue the multiple victim exception for acts of violence applies.  The People argue Gueyger committed acts of violence against multiple people--Peyton and the "other people" whose safety Gueyger disregarded while fleeing.

---

[8]   The People argued either act constituted assault.

Certainly section 245, subdivision (c), which requires assault with a deadly weapon other than a firearm or by means likely to produce great bodily injury, qualifies as an act of violence.  Felony or reckless evading, however, has been held *not* to be an act of violence for purposes of the multiple victim exception of section 654.  (*People v. Garcia* (2003) 107 Cal.App.4th 1159, 1163.)  Indeed, because subdivision (b) of Vehicle Code section 2800.2 defines the term "willful and wanton disregard for the safety of persons or property" very broadly to include any flight from an officer in which three of certain traffic violations are committed (some of which can be committed without endangering human life), Vehicle Code section 2800.2 is not an inherently dangerous felony for purposes of second degree felony murder.  (*People v. Howard* (2005) 34 Cal.4th 1129, 1137-1139.)

The trial court erred in failing to stay Gueyger's sentence on count 7, reckless evading, pursuant to section 654.

IV

*Lifetime Suspension of Driving Privileges*

*A.   Background*

The probation report recommended that Gueyger's driving privileges be revoked for life pursuant to Vehicle Code section 13351.5.  At sentencing, the trial court did not mention driving privileges, but indicated it would impose the terms recommended by the Probation Department with certain modifications.  The abstract of judgment indicates Gueyger's driving license is suspended for life pursuant to Vehicle Code section 13351.5.

14

Gueyger contends it was improper for the trial court to suspend his driving privileges. He contends such an order was not part of the oral pronouncement of sentence and it is an unauthorized sentence because only the Department of Motor Vehicles (DMV) can suspend driving privileges. Because the order is unauthorized, Gueyger argues, he has not forfeited the claim by failing to object at sentencing.

*B.     The Law*

Vehicle Code section 13351.5 provides in part: "(a) Upon receipt of a duly certified abstract of the record of any court showing that a person has been convicted of a felony for a violation of Section 245 of the Penal Code and that a vehicle was found by the court to constitute the deadly weapon or instrument used to commit that offense, the department immediately shall revoke the privilege of that person to drive a motor vehicle. [¶] (b) The department shall not reinstate a privilege revoked under subdivision (a) under any circumstances."

A Vehicle Code section 13351.5 revocation is a mandatory administrative function. (*In re Grayden N*. (1997) 55 Cal.App.4th 598, 604 (*Grayden N*.).) "Simply put, the ... court is bound, under the statute, to report to the [DMV] the true finding [defendant] committed an assault with a deadly weapon in violation of Penal Code section 245, subdivision (a), and the true finding the weapon ... used was a vehicle." (*Grayden N., supra*, 55 Cal.App.4th at p. 604.) Driving is a privilege, not a right, and license revocation is a civil, not a criminal,

15

sanction.  (*People v. Linares* (2003) 105 Cal.App.4th 1196, 1199.)  The DMV, not the court, has the power to revoke a driver's license pursuant to Vehicle Code section 13351.5. (*Grayden N., supra,* at p. 604.)

C.    *Analysis*

The trial court incorporated the terms recommended by the probation report, except those it modified, in its oral pronouncement of sentence.  Thus, the reference to Vehicle Code section 13351.5 was part of the sentence.  We construe the trial court's order as an acknowledgement that Gueyger's driver's license would be revoked by the DMV upon receipt of the certified abstract.  The trial court, however, failed to include in the abstract the precise information the DMV needs to revoke Gueyger's license, namely, that Gueyger used a vehicle to commit the section 245 felony.  Since this case must otherwise be remanded for correction of the abstract, upon remand the court should make the determination called for by Vehicle Code section 13351.5.

VI

*Correction of Abstract*

Both Gueyger and Ponce properly received only 15 percent conduct credits pursuant to section 2933.2 due to their robbery convictions.  Both abstracts, however, indicate local conduct credits were awarded pursuant to section 4019.  Gueyger contends, and the People concede, the abstracts should be corrected.  We agree and shall order correction.

16

**DISPOSITION**

Gueyger's conviction on count 6, accessory after the fact, is reversed.  Gueyger's conviction on count 2 and Ponce's convictions on counts 3 and 11, petty theft with a prior, are reduced to convictions for section 484, misdemeanor theft.  Gueyger's sentence on count 7, reckless evading, is stayed pursuant to section 654.  We further remand the matter for correction of the abstracts of judgment to show that local conduct credits for both defendants are awarded pursuant to section 2933.1, and for the trial court to make the express finding that Gueyger used a vehicle as a deadly weapon in the felony assault, count 8.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment for both Gueyger and Ponce to reflect these modifications and to forward certified copies of the amended abstracts to the Department of Corrections and Rehabilitation and the Department of Motor Vehicles.

                                         DUARTE            , J.


We concur:


      NICHOLSON          , Acting P. J.


      HULL              , J.


17