**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

JUAN JOSE VIDAL,
    *Defendant-Appellant.*

No. 04-50185

D.C. No.
CR-03-01178-1-
JTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
June 20, 2007—San Francisco, California

Filed October 10, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Stephen Reinhardt, Alex Kozinski, Michael Daly Hawkins,
Sidney R. Thomas, Kim McLane Wardlaw,
William A. Fletcher, Raymond C. Fisher, Ronald M. Gould,
Richard A. Paez, Richard C. Tallman, Richard R. Clifton,
Jay S. Bybee, Consuelo M. Callahan, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Callahan;
Dissent by Judge Kozinski

13623

**COUNSEL**

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the appellant.

Karen P. Hewiit, U.S. Attorney, Bruce R. Castetter, Assistant U.S. Attorney, and Mark R. Rehe, Assistant U.S. Attorney, San Diego, California, for the appellee.

Christopher J. Meade, Janet R. Carter, Shauna Burgess, Wilmer Cutler Pickering Hale & Dorr LLP, New York, New York, as *amicus curiae* in support of appellant.

**OPINION**

PAEZ, Circuit Judge:

Following Juan Jose Vidal's plea of guilty to a violation of 8 U.S.C. § 1326, the district court imposed an eight-level sentence enhancement, pursuant to United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2L1.2(b)(1)(C) (2002),[1] based on Vidal's 1994 conviction under California Vehicle Code section 10851(a), which criminalizes "theft and unlawful driving or taking of a vehicle."

In this appeal, we consider whether a prior conviction for a violation of section 10851(a) qualifies as an aggravated felony within the meaning of U.S.S.G. § 2L1.2(b)(1)(C) and 8 U.S.C. § 1101(a)(43)(G),[2] which includes within the group of aggravated felony offenses "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." We conclude that a conviction under section 10851(a) does not "necessarily satisf[y]" all the elements of the generic theft offense, *see United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007) (en banc), because it applies not only to principals and accomplices but also to accessories after the fact. We also conclude, applying the modified categorical approach, that the record before us does not establish that by pleading guilty to a violation of section 10851(a), Vidal admitted to all the elements of generic theft. We therefore vacate the district court's sentence and remand for resentencing.

---

[1] The district court relied on the 2002 Guidelines Manual.

[2] The application notes to U.S.S.G. § 2L1.2 provide that "[f]or purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2, cmt. n.2 (2002).

I.

In 1994, Juan Jose Vidal was charged in the Municipal Court of San Diego County with "unlawful driving or taking of a vehicle" in violation of California Vehicle Code section 10851(a).[3] Count One of the Complaint alleged:

> On or about June 21, 1994 [Vidal] did willfully and unlawfully drive and take a vehicle, the personal property of GARY CRAWFORD, without the consent of and with intent to deprive the owner of title to and possession of said vehicle, in violation of Vehicle Code Section 10851(a).

Count Two charged Vidal with "receiving stolen property," in violation of Penal Code section 496(a), for allegedly "buy-[ing], receiv[ing], conceal[ing], sell[ing], and withhold[ing] a vehicle the property of GARY CRAWFORD, which had been stolen."

Vidal pled guilty, pursuant to *People v. West*, 477 P.2d 409 (Cal. 1970), to Count One in exchange for the district attorney's promise to dismiss Count Two. As opposed to the conduct charged in Count One of the Complaint—"willfully and unlawfully driv[ing] and tak[ing] a vehicle"—the written plea and waiver of rights form shows that Vidal pled guilty only to "driving a stolen vehicle." No recitation of the factual basis for Vidal's plea appears on this form. Instead, only "*People v. West*" is entered in the section that requests a description of facts supporting any charges in Count One. The district court record does not contain a transcript of the plea hearing or a copy of the judgment of conviction and sentence.

In 2003, Vidal was charged with and pled guilty to violating 8 U.S.C. § 1326. Pursuant to U.S.S.G. § 2L1.2(b)(1)(C) (2002), Vidal was subject to an eight-level sentence enhance-

---

[3]He was charged *sub nom* "Jose Luis Martinez, aka Carlos Coral Cruz."

ment if he "previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony."[4] Concluding that the 1994 conviction under California Vehicle Code section 10851(a) constituted an aggravated felony "theft offense," the district court applied the eight-level enhancement. After applying a three-level downward adjustment for acceptance of responsibility, the district court imposed a sentence of thirty-three months and a three-year period of supervised release.

Vidal timely appealed his sentence, arguing that his 1994 conviction was not an aggravated felony and that *Blakely v. Washington*, 542 U.S. 296 (2004), precluded application of the *Taylor* modified categorical approach. *See Taylor v. United States*, 495 U.S. 575 (1990). He also objected, under *United States v. Booker*, 543 U.S. 220 (2005), to the district court's treatment of the Guidelines as mandatory. A divided three-judge panel affirmed the district court's application of the eight level sentence enhancement but remanded for further proceedings in light of *Booker* and *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). *See United States v. Vidal*, 426 F.3d 1011 (9th Cir. 2005). We granted rehearing en banc, *see* 453 F.3d 1114 (9th Cir. 2006), but stayed submission pending the Supreme Court's decision in *Gonzales v. Duenas-Alvarez*, 549 U.S. ___, 127 S. Ct. 815 (2007).

*Duenas-Alvarez* establishes that the term "theft offense" in 8 U.S.C. § 1101(a)(43)(G) "includes the crime of '*aiding and abetting*' a theft offense" and that, accordingly, the possibility of being convicted under section 10851(a) as an accomplice does not render the statute broader than the generic definition. *Id.* at 820. In so holding, the Court rejected the petitioner's argument that even if the generic theft offense includes accomplice liability, California's application of the natural and probable consequences doctrine would support a convic-

---

[4]As noted above, the Guidelines commentary refers to the aggravated felony definition in 8 U.S.C. § 1101(a)(43).

tion based on conduct that would not qualify as generic aiding and abetting. *See id.* at 821-22 (overruling *Penuliar v. Ashcroft*, 395 F.3d 1037 (9th Cir. 2005), *vacated* 127 S. Ct. 1146 (2007)). The Court declined to reach the petitioner's alternative arguments that section 10851(a) is overbroad because it extends liability to accessories after the fact and because it encompasses joyriding. *Id.* at 822-23.

*Duenas-Alvarez* thus left open the question we consider here: whether the possibility of being convicted under section 10851(a) as an accessory after the fact renders the statute categorically broader than the generic theft offense. In light of our determination that it does, we need not address Vidal's alternative arguments that section 10851(a) is overly inclusive because California's natural and probable consequences doctrine would allow for conviction without *mens rea* to commit theft and because joyriding and *de minimis* deprivations fall within the statute's sweep. We also conclude, applying the modified categorical approach, that because Vidal's plea pursuant to *People v. West* did not establish the factual predicate for his conviction, the record does not "unequivocally establish that [he] pleaded guilty to all the elements of the generic [theft] offense." *Li v. Ashcroft*, 389 F.3d 892, 896 n.7 (9th Cir. 2004) (internal quotation marks and alteration omitted). Accordingly, we vacate the sentence and remand for resentencing.[5]

## II.

Whether Vidal's 1994 conviction constitutes an aggravated felony for purposes of U.S.S.G. § 2L1.2(b)(1)(C) is a question of law that we review *de novo*. *United States v. Arellano-*

---

[5]Vidal did not reassert his *Blakely* argument in his supplemental briefing to the en banc court. In light of our decision to vacate his sentence on other grounds, we need not address this issue, but we note that the argument is foreclosed by *United States v. Smith*, 390 F.3d 661, 666-67 (9th Cir. 2004), *amended by* 405 F.3d 726 (9th Cir. 2005).

*Torres*, 303 F.3d 1173, 1176 (9th Cir. 2002) (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc)).

## III.

To determine whether the district court properly applied the eight-level enhancement in U.S.S.G. § 2L1.2(b)(1)(C) to Vidal's conviction under California Vehicle Code section 10851(a), we employ the two-step test set forth in *Taylor*. We first consider whether the "full range of conduct covered by the criminal statute falls within the meaning of" the generically defined theft offense. *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002) (internal quotation marks and alteration omitted). If the answer to this first, categorical inquiry is no, we then turn to the *Taylor* modified categorical approach "to determine if there is sufficient evidence [in the record] to conclude that [Vidal] was convicted of the elements of the generically defined crime." *Id.*

### A. Categorical Approach

Like several of our sister circuits,[6] we generically define a theft offense as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1026 (9th Cir. 2005) (internal quotation marks omitted).[7] Vidal's 1994 conviction is not categorically a theft offense unless the full range of conduct proscribed by section 10851(a) falls within the scope of this

---

[6]*See, e.g.*, *Abimbola v. Ashcroft*, 378 F.3d 173, 176 (2d Cir. 2004); *Nugent v. Ashcroft*, 367 F.3d 162, 173-74 (3d Cir. 2004); *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001).

[7]The Supreme Court quoted this definition with approval in *Duenas-Alvarez*, 127 S. Ct. at 820.

generic definition. We conclude that it does not because whereas the generic theft offense encompasses only principals, accomplices,[8] and others who incur liability on the basis of pre-offense conduct, section 10851(a) also reaches accessories after the fact.

1.

At common law, participants in a felony offense fell into four separate categories:

> (1) *first-degree principals*, those who actually committed the crime in question; (2) *second-degree principals*, aiders and abettors present at the scene of the crime; (3) *accessories before the fact*, aiders and abettors who helped the principal before the basic criminal event took place; and (4) *accessories after the fact*, persons who helped the principal after the basic criminal event took place.

*Duenas-Alvarez*, 127 S. Ct. at 820 (citing *Standefer v. United States*, 447 U.S. 10, 15 (1980)). Modern criminal law, however, has eliminated the distinction among the first three groups. *Id.* (citing *Standefer*, 447 U.S. at 16-19, and *Nye & Nissen v. United States*, 336 U.S. 613, 618 (1949)); *see also id.* (explaining that every state and federal jurisdiction has abolished the common-law distinction between principals and aiders and abettors and that "criminal law now uniformly treats those who fall into [these three groups] alike"); 2

---

[8]We use the term *accomplice* to refer generally to "[a] person who knowingly, voluntarily, and intentionally unites with the principal offender in committing a crime and thereby becomes punishable for it." *Black's Law Dictionary* 17 (8th ed. 2004). As we will explain, accessories after the fact do not fall within this definition. *See also id.* (noting that "not all authorities treat [the term *accomplice*] as including an accessory after the fact"); Charles E. Torcia, *Wharton's Criminal Law* § 38 (15th ed. 1993) ("The person is not an accomplice if he participated with the accused only as an accessory after the fact.").

Wayne R. LaFave, *Substantive Criminal Law* § 13.1 (2d ed. 2003) ("The distinctions between the [first] three categories . . . have now been largely abrogated."). The Supreme Court accordingly concluded in *Duenas-Alvarez* that "one who aids or abets a theft falls, like a principal, within the scope of [the] generic definition" of a theft offense. 127 S. Ct. at 820.

In contrast, federal law, like many state criminal codes, has retained accessories after the fact as a separate category. *Compare* 18 U.S.C. § 2(a) (allowing accessories before the fact to be punished as principals), *with* 18 U.S.C. § 3 (limiting accessories after the fact to one half of the principal's maximum punishment); *see also Bollenbach v. United States*, 326 U.S. 607, 611 (1946) ("Congress has not made accessories after the fact principals. Their offense is distinct and is differently punished." (citation omitted)); LaFave, *supra*, § 13.1 ("[The] category [of accessory after the fact] has . . . remained distinct from the others, and today the accessory after the fact is not deemed a participant in the felony but rather one who has obstructed justice, subjecting him to different and lesser penalties.").

**[1]** We have therefore held that a prior felony conviction for being an accessory after the fact to murder for hire does not fall within the generic definition of "crime of violence" so as to trigger the career offender enhancement in U.S.S.G. § 4B1.1 (1989). *See United States v. Innie*, 7 F.3d 840, 850 (9th Cir. 1993) (explaining that the generic crime of violence includes the element of attempted or threatened use of physical force against the person or property of another but that accessory-after-the-fact liability under 18 U.S.C. § 3 does not); *id.* at 852 ("[T]he offense of being an accessory *after* the fact is clearly different from aiding and abetting . . . . [because] an accessory after the fact does not aid in the commission of the underlying offense."); *see also United States v. Gomez-Mendez*, 486 F.3d 599, 604-05 (9th Cir. 2007) (holding that a conviction for statutory rape could encompass "aiding and abetting or for participating as an accessory *before* the

fact" but describing accessory-after-the-fact liability as "as a separate and distinct criminal offense").

Application Note 4 to U.S.S.G. § 2L1.2 (2002)[9] does not alter this analysis. The note instructs that "[p]rior convictions of offenses counted under subsection (b)(1) [listing specific offense characteristics] include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." As discussed above, modern criminal law treats aiders and abetters as principals. 2 LaFave, *supra*, § 13.1. The rationale behind the inchoate offenses of conspiracy and attempt is similarly to criminalize conduct that contributes to the commission of the underlying offense. *See* 2 *id.* § 11.2 (describing attempt); § 12.1 (describing conspiracy). Accessory-after-the-fact liability, in contrast, is aimed at post-offense conduct that aids the offender in evading law enforcement. As LaFave explains in his treatise *Substantive Criminal Law*:

> This development whereby the accessory after the fact is dealt with in a distinct way is a most appropriate one and does not conflict at all with the modern tendency to abolish the distinctions between principals in the first degree, principals in the second degree, and accessories before the fact. The latter three types of offenders have all *played a part in the commission of the crime* and are quite appropriately held accountable for its commission. The accessory after the fact, on the other hand, *had no part in causing the crime*; his offense is instead that of interfering with the processes of justice and is best dealt with in those terms.

*Id.* § 13.6 (emphases added).

---

[9]This provision appears as Application Note 5 in the 2007 Guidelines Manual.

Our analysis in *United States v. Cox*, 74 F.3d 189 (9th Cir. 1996), and *United States v. Shumate*, 329 F.3d 1026 (9th Cir. 2003), of an identically phrased application note further shows why accessories after the fact do not fall within the group of offenders to whom Congress intended the § 2L1.2(b)(1)(C) enhancement to apply.[10] We concluded in *Cox* that Application Note 1 to § 4B1.2[11] was not exhaustive and that "the omission of solicitation from the list [of offenses included within "crime of violence"] does not carry legal significance." *Id.* at 190 (citing § 1B1.1 cmt. n.2, which explains that "[t]he term 'includes' is not exhaustive"). We therefore held that Cox's conviction for solicitation of murder for hire was a "crime of violence" under § 4B1.2 and so triggered an enhancement under § 4B1.1. *Id.* Relying on *Cox*, we similarly concluded in *Shumate* that a conviction for solicitation of a controlled substances offense triggered a § 4B1.1 sentence enhancement. *See* 329 F.3d at 1030 (citing *Cox*, 74 F.3d at 190); *see also id.* at 1029 n.5 (reconciling *Cox* with *Rivera-Sanchez*, 247 F.3d 905).[12]

---

[10]We recognize that there is some tension between *Shumate* and *Cox*, and *Innie* insofar as they read Application Note 1 to § 4B1.2 as non-exhaustive. *Compare Shumate*, 329 F.3d at 1030 (reading solicitation into § 4B1.2's definition of "controlled substance offense" because Application Note 1's list of included offenses was "not exhaustive"), and *Cox*, 74 F.3d at 190 (same), with *Innie*, 7 F.3d at 852 (vacating a § 4B1.1 enhancement because Application Note 1 to § 4B1.2 "specifically provide[s] that ' "crime of violence" . . . include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses' " but makes no mention "of being an accessory after the fact to a crime of violence"). We need not resolve this tension here because, even reading the identically worded application note to § 2L1.2 now at issue non-exhaustively, accessories after the fact, in contrast to those liable for the pre-commission offense of solicitation, do not fall within the class of offenders to which the application note logically extends.

[11]"For purposes of this guideline—'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

[12]We concluded in *Rivera-Sanchez* that a conviction for solicitation of a drug trafficking offense did not trigger a sentence enhancement under

**[2]** As described above, this distinction comports with general principles of criminal law. Application Note 4 to U.S.S.G. § 2L1.2 is titled "Aiding and Abetting, Conspiracies, and Attempts." Along with solicitation, these are all offenses that require as one element the *mens rea* to achieve the commission of a particular crime. *See* 4 *Wharton's Criminal Law* § 695 (defining mental state for attempt); 4 *id.* § 680 (defining mental state for conspiracy); § 38 (describing an accomplice as one who "with the intent to promote or facilitate the commission of the crime, . . . *solicits*, requests, or commands the other person to commit it, or *aids* the other person in planning or committing it" and noting that "[t]he absence of mens rea precludes one from being an accomplice" (emphases added)). An accessory after the fact, in contrast, need only, with "know[ledge] that a felony has been committed, render[ ] aid to the felon in order to protect him, hinder his apprehension, or facilitate his escape. . . . [I]t is obviously impossible for his mens rea to be the same as that of the felon whom he aids." 1 *id.* § 33. Because one need only have assisted the offender with knowledge that the offense has *already been committed* in order to incur accessory-after-the-fact liability, *see* 18 U.S.C. § 3, one who is convicted as an accessory after the fact to theft cannot be said to have committed all elements of generic theft, which includes the element of "criminal intent to deprive the owner of rights and benefits of ownership," *Martinez-Perez*, 417 F.3d at 1026.

---

§ 2L1.2(b)(1)(A) because the Controlled Substances Act, to which 8 U.S.C. § 1101(a)(43)(B) refers in defining a drug trafficking offense, covers attempt and conspiracy but not solicitation. 247 F.3d at 909 (*citing Leyva-Licea v. INS*, 187 F.3d 1147, 1150 (9th Cir. 1999)). In *Shumate* we explained, "*Cox* is not contrary to our opinion in *Rivera-Sanchez* . . . . [which] did not deal with the career offender provision at hand . . . . [but rather] with the aggravated felony provisions of U.S.S.G. § 2L1.2(b)(1)(A)," which, in contrast to U.S.S.G. § 4B1.2, "are constrained by the provisions of 8 U.S.C. § 1101(a)(43)(B), 8 U.S.C. § 1326, and 18 U.S.C. § 924(c)(2)." 329 F.3d at 1029 n.5.

**[3]** For these reasons, we conclude that an accessory after the fact to theft cannot be culpable of generic theft. Thus, if section 10851(a) extends liability to accessories after the fact, then an offense under this statute is not categorically an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G).

2.

**[4]** Section 10851(a) imposes criminal liability for the "[t]heft and unlawful driving or taking of a vehicle" on:

> [a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is *a party or an accessory to or an accomplice in* the driving or unauthorized taking or stealing. . . .

*Id.* (emphasis added). Without reaching the parties' dispute over this statute's taking and intent requirements, we focus the crux of our inquiry solely on the phrase "party or an accessory to or an accomplice in."[13]

---

[13]Until recently, three separate California statutes addressed vehicle theft: Penal Code section 487(d)(1), which establishes grand theft of an automobile as a felony; Penal Code section 499b, which formerly punished as a misdemeanor the taking of "any automobile, bicycle, motorcycle, or other vehicle or motorboat or vessel, for the purpose of temporarily using or operating the same;" and Vehicle Code section 10851. In 1996, the California legislature amended Penal Code section 499b so as to reach only the temporary taking of a "bicycle or motorboat or vessel," 1996 Legis. Serv. ch. 660, § 1, in order to avoid duplication with section 10851, *id.* ch. 660 § 3. Accordingly, vehicle theft is now prosecuted under Penal Code section 487(d)(1), which requires proof of intent permanently to deprive the owner of her property, *see People v. Marquez*, 62 Cal. Rptr. 3d 31, 33 (Ct. App. 2007), or Vehicle Code section 10851, which in contrast requires proof of intent to deprive the owner of title or possession either permanently or temporarily, *see People v. Montoya*, 94 P.3d 1098, 1100 (Cal. 2004).

California explicitly abrogated the common-law distinction between principals and accessories before the fact in 1872, with the enactment of Penal Code section 971, which is still in effect. As the California Supreme Court definitively announced in *People v. Collum*, "in this State an accessary [sic] before the fact is not recognized. The law declares such an [sic] one a principal." 122 Cal. 186, 187 (1898).

**[5]** California's original vehicle theft statute was enacted in 1923, *see* Veh. Code § 146 (repealed in 1935 and recodifed at § 503),[14] and, like the present section 10851(a), made the driving of a vehicle without the owner's consent "with intent to either permanently or temporarily deprive the owner . . . of his title to or possession of such vehicle whether with or without intent to steal the same" a felony. Also like the current section 10851(a), the 1923 statute extended felony liability to "[a]ny person who assists in, or is a party or accessory to or an accomplice in, any such stealing." 1923 Cal. Stat. page 564.[15] Given that California abolished any distinction between principals and accessories *before* the fact half a century prior to the enactment of the original vehicle theft statute, *see* Pen. Code § 971, section 10851(a)'s use of the term "accessory to" can refer only to accessories *after* the fact.

That section 10851(a)'s use of "accessory to" refers only to accessories after the fact—and not to accessories before the fact or accomplices—is further evidenced by comparing the statutory definitions of the terms in the Penal Code. Section

---

[14]*See also People v. Bailey*, 165 P.2d 558, 558 (Cal. App. Dep't Super. Ct. 1946) (explaining that "[t]he Vehicle Act of the State of California, as enacted in 1923 Statutes of 1923, p. 517[ ], contained section 146 which was the predecessor of the present section 503 of the Vehicle Code, the latter having been passed in 1935 and amended in 1939"). Section 10851 was enacted in 1959, replacing the former section 503.

[15]The 1939 statute, which was recodified in 1959 as section 10851, similarly extended felon liability to "[a]ny person who assists in, or is a party or accessory to or an accomplice in any such driving, or unauthorized taking or stealing."

31 defines "principals" as "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission"). Section 1111 defines an "accomplice" as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." By contrast, section 32, defines an "accessory" as one "who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof." The California Penal Code therefore explicitly uses the term accessory to refer only to an accessory after the fact. *See also People v. Horton*, 906 P.2d 478, 506 (Cal. 1995) ("A mere accessory . . . is not an accomplice.").

We presume that a legislature does not employ redundant language in crafting a statute and are therefore obliged to read the terms "accessory" and "accomplice" in Vehicle Code section 10851(a) as referring to distinct, rather than overlapping, classes of offenders. *See Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) ("It is a well-established principle of statutory construction that legislative enactments should not be construed to render their provisions mere surplusage." (internal quotation marks omitted)). We therefore disagree with the dissenters' approach of simply treating "accessory to" in section 10851(a) as a "single superfluous and ambiguous word." Callahan Dissent at 13655; *see also* Kozinski Dissent at 13671. We may not ignore the express language of the statute, particularly in light of the fact that the California legislature has revisited this offense at least ten times since its 1923 enactment of the original section 146 (repealed 1939). Despite two recodifications and numerous amendments, the state legislature has never eliminated or modified the "accessory to" language. For the same reason,

we reject the Government's argument that section 10851(a) is "inartfully drafted" and that, consequently, nothing can be inferred from the inclusion of the term "accessory." This assertion flies in the face of our presumption that a legislative body acts rationally when it enacts statutes, *see Crandal v. Ball, Ball & Brosamer, Inc.,* 99 F.3d 907, 910 (9th Cir. 1996) ("A statute should be read in a manner which attribute[s] a rational purpose to the legislature."), as well as the canon against converting statutory language into surplusage, *see Am. Vantage Cos.,* 292 F.3d at 1098.[16]

[6] Because section 10851(a) expressly extends to one who is an "accessory to . . . the driving or unauthorized taking or stealing," and because Penal Code section 971 eliminates accessories before the fact as a recognized felon category,[17] the plain text of the statute under which Vidal was convicted establishes a "realistic probability" that California "would apply its statute to conduct that falls outside the generic definition of" a theft offense. *Duenas-Alvarez,* 127 S. Ct. at 822. As we recently explained in *Grisel,* when "the text of the statute expressly includes in its definition that which [is] expressly excluded from the generic, federal definition," the statute is overly inclusive. 488 F.3d at 850. This is because

> [when a] state statute explicitly defines a crime more broadly than the generic definition, no "legal imagination," *Duenas-Alvarez,* 127 S. Ct. at 822, is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls

---

[16]The Government's citation to the legislative history of a different statute, *see* Cal. Bill Analysis, A.B. 928 Sen., July 8, 2003, is unpersuasive: the Senate Committee's criticism of section 10851(a)'s phrasing in the context of its discussion of a proposed amendment to an unrelated section of the Penal Code does not conclusively demonstrate that section 10851(a) of the Vehicle Code does not extend to accessories after the fact.

[17]As previously noted, Penal Code section 971 predated the original vehicle theft statute by several decades.

> outside the generic definition of the crime. The state
> statute's greater breadth is evident from its text.

*Id.*

Vidal's argument therefore differs from that advanced by
the petitioner in *Duenas-Alvarez*, who urged the Court to con-
clude that section 10851(a) was overly inclusive because Cali-
fornia's application of the natural and probable consequences
doctrine created the possibility that one could be convicted
under this statute for conduct that would not categorically
qualify as generic aiding or abetting. *See* 127 S. Ct. at 820-21.
In the absence of any case "in which the state courts in fact
did apply the statute in the special (nongeneric) manner," *id.*
at 822, this argument failed for lack of evidence that such an
application of the state statute was a "realistic probabil-
ity[ and] not a theoretical possibility," *id.* In contrast, when
"[t]he state statute's greater breadth is evident from its text,"
*Grisel*, 488 F.3d at 850, a defendant may rely on the statutory
language to establish the statute as overly inclusive.[18] Vidal
has therefore satisfied his burden by pointing to the text of
section 10851(a), which—particularly in light of California's
statutory abolition of accessory before the fact as a distinct
felon category, *see* Pen. Code § 971—expressly extends to
accessories after the fact.

Vidal's case also differs from *James v. United States*, 127
S. Ct. 1586 (2007), where the Supreme Court rejected an
argument that a Florida statute was categorically broader than
the generic offense in light of the fact that "the Florida
Supreme Court has considerably narrowed its application in

---

[18]For this reason, our holding is not at odds with *Gomez-Mendez*. *See*
486 F.3d at 605 (concluding that defendant could not have been convicted
as an accessory after the fact to statutory rape when he was only charged
under Penal Code section 261.5, which unlike Vehicle Code section
10851(a) does not expressly include accessory-after-the-fact liability
within the statutory offense).

the context of attempted burglary." *Id.* at 1594; *see also id.* (noting that "Florida's lower courts appear to have consistently applied this heightened standard"). Here, the Government has presented no similar, affirmative proof that any California court has expressly limited section 10851(a) so as to preclude its application to accessories after the fact.

The Government unavailingly relies on *People v. Clark*, 60 Cal. Rptr. 58 (Ct. App. 1967), and *People v. Donnell*, 125 Cal. Rptr. 310 (Ct. App. 1975), to support its position that notwithstanding the plain text of the statute, California courts read "accessory" in section 10851(a) to mean accomplice. In *Clark*, the Court of Appeal held that a passenger in a stolen car could not be convicted under 10851(a) because "[a]t a minimum, [the] defendant must have known that the vehicle had been unlawfully acquired and must have had that knowledge at a time when he could be said to have, in some way, aided or assisted in the driving." 60 Cal. Rptr. at 62. In that case, the prosecution never claimed that the defendant was an accessory after the fact, so it is doubtful that the court's statement was meant to relate to that theory at all. Moreover, the statement explicitly allows liability in situations where assistance by another occurs after the actual theft, which is more consistent with an accessory-after-the-fact theory than an accomplice theory.

The Government's suggested reading of *Clark* would require an assumption that the California Court of Appeal contravened its own "canon of interpretation requiring us to accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." *United Farm Workers of Am. v. Agric. Labor Relations Bd.*, 48 Cal. Rptr. 2d 696, 704 (Ct. App. 1995)(internal quotation marks omitted). The court further noted in *United Farm Workers* that "[a] construction making some words surplusage is to be avoided." *Id.*; *see also Med. Bd. of Cal. v. Super. Ct.*, 106 Cal. Rptr. 2d 381, 390 (Ct. App. 2001) ("The statutory language is the best indicator of legislative intent. . . . [T]he most pow-

erful safeguard for the courts' adherence to their constitutional role of construing, rather than writing, statutes is to rely on the statute's plain language." (alteration, ellipsis, and internal quotation marks omitted)).[19] We are unwilling to assume that in *Clark* the Court of Appeal decided, without explanation, to reject this canon of construction by ignoring the plain text of section 10851(a).

The Government's reliance on *Donnell* is also misplaced. In that case, the Court of Appeal rejected an argument by the People that because the evidence showed that the defendant was not an "actual participant in the physical taking of [victim Dowen's] car[,] . . . he could be found guilty of both taking and receiving the vehicle when he was later found driving it." 125 Cal. Rptr. at 314 (summarizing the People's argument). Even without any indication that the defendant participated in the taking of Dowen's car, he was liable, under the unique circumstances of his case, for theft under section 10851(a) and therefore improperly convicted of receiving the same as stolen property, *id.* at 314, a holding that does nothing to read accessory-after-the-fact liability out of section 10581(a).

Judge Callahan's dissent, in arguing that section 10851(a) extends to only principals and accomplices, points to California Jury Instruction ("CALJIC") 14.36, which lists as elements of an offense under this statute:

---

[19]California's canon of interpretation accords with federal principles. In *Stenberg v. Carhart*, 530 U.S. 914 (2000), for example, the Supreme Court noted the principle that a court is "without power to adopt a narrowing construction . . . unless such a construction is reasonable and readily apparent." *Id.* at 944 (internal quotation marks omitted); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) (rejecting the Government's construction of a statute that would render one word "insignificant, if not wholly superfluous" and noting that "[it] is our duty to give effect, if possible, to every clause and word of a statute" (internal quotation marks omitted)); *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985) (rejecting a statutory construction that "would have us give the phrase . . . *precisely* the meaning the phrase would have if the word [at issue] were deleted").

1 A person took or drove a vehicle belonging to another person; 2 The other person had not consented to the taking or driving of [his] [her] vehicle; and 3 When the person took or drove the vehicle, [he] [she] had the specific intent to deprive the owner either permanently or temporarily of [his] [her] title to or possession of the vehicle.[20]

*See* Callahan Dissent at 13656. But the fact that this model jury instruction articulates the elements for principal liability does not limit the statute's reach to principals. If the prosecution advanced a theory of aiding and abetting or accomplice liability, the jury would be given CALJIC 3.01[21] or 3.10,[22]

---

[20]Judge Callahan's dissent cites both CALJIC 14.36 and California Criminal Jury Instruction ("CALCRIM") 1820 in support of its argument that section 10851(a) does not extend to accessories after the fact. CALJIC was formerly produced and revised by judges of the Superior Court of Los Angeles County. In 2005, the Judicial Council of California adopted the CALCRIM; pursuant to Rule 2.1050 of the California Rules of Court, CALCRIM "are the official instructions for use in the state of California." The Superior Court of Los Angeles County agreed to stop maintaining CALJIC once the Judicial Council approves its criminal instructions.

CALJIC 14.36 and CALCRIM 1820 vary in phrasing but are consistent in their articulation of the basic elements of a section 10851 offense for purposes of principal liability. As discussed in the text, however, these instructions' enumeration of a theory of principal liability in no way impedes a prosecution under section 10851(a) as an accessory after the fact, with an appropriately modified jury instruction.

[21]"A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she: (1) With knowledge of the unlawful purpose of the perpetrator, and (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and (3) By act or advice aids, promotes, encourages or instigates the commission of the crime. [A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be present at the scene of the crime.] [Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.] [Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]"

[22]"An accomplice is a person who [is] [was] subject to prosecution for the identical offense charged [in Count[s] ___] against the defendant on trial by reason of [aiding and abetting] [or] [being a member of a criminal conspiracy]."

respectively, in addition to 14.36. If the prosecution advanced an accessory-after-the-fact theory, the jury would be given a modified instruction defining accessories after the fact. The California Court of Appeal expressed approval of such an instruction in *People v. Slayden*, 166 P.2d 304 (Ct. App. 1946), where it held that by instructing jurors that "any person who assists in, or is a party *or an accessory to*, or an accomplice in, any such stealing or unauthorized taking or driving [of a vehicle], shall also be deemed *guilty of a felony*," the trial court "correct[ly] state[d] the principles of law embodied therein. (Section 503 of the Vehicle Code.)." *Id.* at 305 (internal quotation marks omitted) (emphasis added).[23]

Judge Callahan's dissent further argues that Vehicle Code section 10851(a)'s use of the term "accessory" must be redundant with "accomplice to" because Penal Code section 32 establishes accessory-after-the-fact liability as a distinct offense, the elements of which must be charged and proven beyond a reasonable doubt. *See* Callahan Dissent at 13659; *see also* Kozinski Dissent at 13672-73. We do not dispute the general proposition that California requires the prosecution separately to allege and prove the elements of accessory-after-

---

[23]Judge Callahan's assertion that a section 10851(a) conviction will lie only when the elements of CALJIC 14.36 are found, *see* Callahan Dissent at 13657, is further undermined by the fact that California courts have sustained section 10851(a) convictions based on conduct such as that described in *People v. Magusin*, 7 P.2d 764 (Ct. App. 1932), where the Court of Appeal rejected a challenge to the sufficiency of the evidence supporting a conviction under the statutory precursor to section 10851 (Vehicle Code section 146, *see supra* note 14). In *Magusin*, the court's discussion is consistent with the defendant having been treated as an accessory after the fact. The court cited an eyewitness's testimony that the defendant's brother drove the stolen car into the eyewitness's auto shop, that the defendant followed in a separate car, and that both defendant and his brother "took part in the transaction which followed, whereby the new or nearly new tires on the [stolen] car were taken off and four very old tires put on in their place." *See id.* at 765. Contrary to the dissent's assertion, Callahan Dissent at 13666 n.8, there is no indication that the prosecution relied on an aiding and abetting theory.

the-fact liability in order to sustain a Penal Code section 32 conviction. "[I]n the absence of statute, an accessory after the fact must be indicted and convicted as such." *People v. Prado*, 136 Cal. Rptr. 521, 523 (Ct. App. 1977). There is no "absence of statute" here, however, because Vehicle Code section 10851(a) by its very terms includes accessory-after-the-fact liability within the felony offense. The fact that California courts have overturned convictions under Penal Code section 32 in cases involving predicate felonies under various sections of the Penal Code has no bearing on our analysis of whether one may be convicted under Vehicle Code section 10851(a) for accessory-after-the-fact conduct.[24]

---

[24]Judge Callahan's dissent draws from *Dunn v. Superior Court*, 206 Cal. Rptr. 242 (Ct. App. 1984), *see* Callahan Dissent at 13662-63, a conclusion that the opinion does not support. *Dunn* involved a defendant's motion for dismissal of several charges because those charges had been twice terminated. A first complaint, which was dismissed before trial, charged the defendant with "violations of Penal Code section 207 (kidnaping), Penal Code section 220 (assault with intent to commit rape) and Vehicle Code section 10851 (theft of an automobile)." *Id.* at 244. On a second complaint, a magistrate judge refused to hold the defendant to answer on charges of "violations of Penal Code sections 209 (kidnaping for the purpose of robbery), 211 (robbery), 496 (possession of stolen property)," but did hold him to answer on a violation of Penal Code section 32 (accessory to auto theft). *Id.* When the prosecution filed the information on all counts in superior court, the defendant moved to dismiss some of those charges under a California rule baring actions twice terminated. *Id.*

Because the defendant in *Dunn* was charged with "being an accessory after the fact as that charge related to auto theft" under Penal Code § 32, *Id.*, Judge Callahan reads this to demonstrate that "California courts *require* prosecutions under an accessory after the fact theory of liability to be brought under Penal Code § 32, even if the underlying offense is a violation of Vehicle Code § 10851(a)." Callahan Dissent at 13663 (emphasis added). But as *Dunn* later makes clear, the predicate vehicle theft felony to the section 32 charge was not pursuant to Vehicle Code section 10851(a), but rather to the Penal Code, presumably Penal Code section 487(d)(1) (grand vehicle theft). *See id.* at 248 (explaining that "Petitioner . . . was subjected to two preliminary hearings after being charged with the theft of the automobile, first under the Vehicle Code and second under the Penal Code"). At most, therefore, *Dunn* supports the irrelevant point that to prosecute someone as an accessory to grand theft of a vehicle, the prosecution must separately allege and prove the elements of Penal Code section 32.

Judge Callahan's dissent finally suggests that we should treat California's accessory-after-the-fact law equivalently with federal law. We agree that both jurisdictions ordinarily treat an accessory-after-the-fact offense as separate and distinct from the predicate felony. But this does not erase the effect of section 10851(a)'s express language: "any person who is a party *or an accessory to* or an accomplice in the driving or unauthorized taking or stealing [of a vehicle], is guilty of a public offense." (Emphasis added). Regardless of any general equivalence between Penal Code section 32 and 18 U.S.C. § 3, we are presented here with a statute that plainly includes accessories after the fact within the scope of the felony offense. The requirements of Penal Code section 32, as established in cases involving other predicate felonies, whether state or federal, are therefore inapplicable.

**[7]** In sum, because section 10851(a) extends to accessories after the fact and because the generic theft offense only reaches principals and other similar offenders, we cannot conclude that the "full range of conduct" covered by this California statute would sustain a generic theft conviction. *See Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002) (internal quotation marks omitted). We must therefore proceed to the modified categorical approach "to determine if the record unequivocally establishes that [Vidal] was convicted of the generically defined crime, even if the statute defining [his] crime is overly inclusive." *Martinez-Perez*, 417 F.3d at 1028.

## B. Modified Categorical Approach

A prior conviction based on an overly inclusive criminal statute that resulted from a guilty plea rather than a jury verdict will support a sentence enhancement only if the record confirms that the plea " 'necessarily' rested on the fact identifying the [offense] as generic." *Shepard v. United States*, 544 U.S. 13, 21 (2005) (quoting *Taylor*, 495 U.S. at 602). In making this determination, "any enquiry beyond statute and charging document must be narrowly restricted to implement

the object of the statute and avoid evidentiary disputes." *Id.* at 23 n.4. Accordingly, in considering whether Vidal's 1994 guilty plea "necessarily admitted, and supported a conviction for, generic [theft]," our review is "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which [Vidal] assented." *Id.* at 16. We may not " 'look beyond the record of conviction itself to the particular facts underlying the conviction.' " *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1164 (9th Cir. 2006) (quoting *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004)); *see also Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1154 (9th Cir. 2003) (same).

Consistent with *Shepard*, we applied the modified categorical approach in *Smith* and concluded that the defendant's plea of *nolo contendere* to first degree burglary qualified as a violent felony within the meaning of U.S.S.G. § 4B1.2(1). *See* 390 F.3d at 666. Relying on the transcript of the plea colloquy, during which Smith admitted, through counsel, to having unlawfully entered an inhabited dwelling, we agreed with the district court that the "record clearly established the elements of generic burglary." *Id.* at 664; *see also id.* at 665-66 (summarizing the record and concluding that it established the factual elements of generic burglary).

Also consistent with *Shepard*, we held in *United States v. Snellenberger*, 493 F.3d 1015 (9th Cir. 2007), that the defendant's plea of *nolo contendere* to burglary did not necessarily establish his conviction as a crime of violence when the record did not contain " 'the terms of a plea agreement or transcript of a colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information.' " *Id.* at 1019 (quoting *Shepard*, 544 U.S. at 26) (alterations omitted). The record contained only a minute order, which was insufficient because it did not indicate that the defendant even assented to facts supporting the plea, let

alone what that factual basis was. *See id.* (explaining that the minute order "contains no facts and no indication that it has even been shown to the defendant"); *see also Jordison v. Gonzales*, ___ F.3d ___, 2007 WL 2472635, at *1 (9th Cir. Sept. 4, 2007) (publication pending) (holding that a record containing only the charging document and the minute order of defendant's plea colloquy did not establish the conviction as the generic offense).

**[8]** The record here similarly fails to establish the factual predicate for Vidal's plea of guilty pursuant to *People v. West*. The only two judicially noticeable documents before the district court were the Complaint and the written plea and waiver of rights form.[25] We know from the Complaint that Vidal was *charged* with "willfully and unlawfully driv[ing] and tak[ing] a vehicle . . . without the consent of and with intent to deprive the owner of title to and possession of said vehicle, in violation of Vehicle Code Section 10851(a)." He pled guilty, however, only to "Count 1 10851(a) VC Driving a Stolen Vehicle." The plea does not, therefore, establish that Vidal admitted to all, or any, of the factual allegations in the Complaint.[26] In order to identify a conviction as the generic offense through the modified categorical approach, when the record of conviction comprises only the indictment and the judgment, the judgment must contain "the critical phrase 'as

---

[25]Although the federal pre-sentence report includes some information about Vidal's 1994 conviction under section 10851(a), we may not rely on this document. *See United States v. Franklin*, 235 F.3d 1165, 1171 (9th Cir. 2000) (citing, *inter alia*, *Taylor*, 495 U.S. at 602, and *United States v. Bonat*, 106 F.3d 1472, 1475-76 (9th Cir. 1997)).

[26]For this reason, the fact that the Complaint alleged facts supporting principal liability does not establish that Vidal was convicted as a principal. Contrary to Judge Callahan's assertion, *see* Callahan Dissent at 13666 n.7, the common-law rule against holding a defendant jointly liable as a principal and accessory after the fact based on the same conduct is not implicated by our conclusion that on this record, Vidal could have been convicted as an accessory after the fact *instead of as*, not *in addition to*, a principal.

charged in the Information.' " *Li*, 389 F.3d at 898; *cf. Bonat*, 106 F.3d at 1477-78 ("Even if we agreed with Bonat that the district court only relied on the charging document, we would affirm because the Judgment on Plea of Guilty shows that Bonat *did in fact plead guilty to second degree burglary as charged in the Information*, and the Information included all the elements of generic burglary." (emphasis added)).

Moreover, in the context of a *People v. West* plea, "[a] court is not limited to accepting a guilty plea only to the offense charged but can accept a guilty plea to any reasonably related lesser offense." *People v. Tuggle*, 283 Cal. Rptr. 422, 426 n.10 (Ct. App. 1991) (rejecting reliance on the fact that the offense was charged in the conjunctive because the prosecutor could have amended the information before the plea) (citing *West*, 477 P.2d at 419-20)), *overruled on other grounds by People v. Jenkins*, 893 P.2d 1224 (1995). The prosecution need not have formally amended the two counts in order for Vidal to have pled guilty to conduct other than that alleged in the Complaint. *See People v. Sandoval*, 43 Cal. Rptr. 3d 911, 926 (Ct. App. 2006) (explaining that under California's informal amendment doctrine no "talismanic significance [attaches] to the existence of a written information" and that "a defendant's conduct may effect an informal amendment of an information without the People having formally filed a written amendment to the information"). Here, and in contrast to *Bonat*, where we affirmed a sentence enhancement because the state court judgment of conviction on which the district court relied reflected that the defendant pled guilty "to second degree burglary *as charged in the Information*," 106 F.3d at 1478 (emphasis added), we have no way of knowing what conduct Vidal admitted when he pled guilty to conduct that was not identical to that charged in Count One of the Complaint.

In addition to the fact that Vidal did not plead "guilty as charged," an indictment that merely recites the language of the statute, as does the 1994 Complaint, is insufficient to

establish the offense as generic for purposes of a modified categorical analysis. *See United States v. Lopez-Montanez*, 421 F.3d 926, 931 (9th Cir. 2005).[27] We have repeatedly held that charging documents are "insufficient alone to prove the facts to which [a defendant] admitted." *Snellenberger*, 493 F.3d at 1019 (citing *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007), and *United States v. Parker*, 5 F.3d 1322, 1327 (9th Cir. 1993) (holding that charging papers alone did not clearly establish whether the prior conviction was based on conduct that fell within the generic offense)).

When, as here, the statute of conviction is overly inclusive, "without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies . . . in the defendant's own admissions or accepted findings of

---

[27]California case law indicates that California prosecutors regularly employ generic charging language similar to that alleged in the 1994 Complaint when prosecuting section 10851(a) offenses. *See, e.g.*, *People v. Moon*, 117 P.3d 591, 606 (2005) (quoting from the information, which "charged that '[o]n or about June 15, 1990, . . . the crime of UNLAWFUL DRIVING OR TAKING OF A VEHICLE, in violation of VEHICLE CODE SECTION 10851(a), a Felony, was committed by RICHARD RUSSELL MOON, who did willfully and unlawfully drive and take a certain vehicle, to wit, a VW Cabriolet . . . then and there the personal property of MELITTA GREIG without the consent of and with intent, either permanently or temporarily, to deprive the said owner of title to and possession of said vehicle' "); *People v. Green*, 40 Cal. Rptr. 2d 239, 243 (Ct. App. 1995) (quoting from the complaint, which alleged, " 'On and between August 5, 1992 and August 6, 1992, in the County of Los Angeles, the crime of UNLAWFUL DRIVING OR TAKING OF A VEHICLE, in violation of VEHICLE CODE SECTION 10851(a), a Felony, was committed by WARREN LEE GREEN, who did willfully and unlawfully drive and take a certain vehicle, to wit, 1977 Chevrolet . . . then and there the personal property of Esteban Olalde without the consent of and with intent, either permanently or temporarily, to deprive the said owner of title to and possession of said vehicle' "). In light of this apparently standard prosecutorial practice, we cannot conclude from the 1994 charging document, which likewise simply recited the statutory elements of the offense and inserted the victim's name and car description, that Vidal admitted to the facts as generically alleged.

fact confirming the factual basis for a valid plea." *Shepard*, 544 U.S. at 25. The only other judicially noticeable document in the record before us that might provide this confirmation is the written plea and waiver of rights form, which reflects that Vidal entered a plea of guilty pursuant to *People v. West*. In *West* the California Supreme Court affirmed the constitutionality of plea bargaining, specifically addressing the practice of pleading guilty to a lesser offense "without specification of punishment." 477 P.2d at 416.[28] The court also explained that, for purposes of reviewing the constitutionality of a defendant's plea, the trial court should create a record that includes the plea bargain. *Id.* at 417-18; *see also id.* at 421 ("[T]he plea bargain plays a vital role in our system of criminal procedure . . . . We emphasize, again, however, that the plea bargain can be viable only if it is candidly disclosed to the trial court and incorporated in the record of the case.").

The California Supreme Court subsequently characterized a *People v. West* plea as a plea of *nolo contendere* that does not establish factual guilt. *See In re Alvernaz*, 830 P.2d 747, 752 (1992) (describing a *People v. West* plea as a "plea of nolo contendere, not admitting a factual basis for the plea"); *see also United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006) ("[A] plea of nolo contendere . . . is, first and foremost, not an admission of factual guilt. It merely allows the defendant so pleading to waive a trial and to authorize the court to treat him as if he were guilty." (citation omitted)). By entering a *West* plea a defendant "[does] not admit the specific details about his conduct on the . . . counts [to which] he pled guilty." *Carty v. Nelson*, 426 F.3d 1064, 1068 (9th Cir. 2005) (citing *In re Alvernaz*, 830 P.2d 747); *see also West*,

---

[28]*See also id.* at 419-20 ("[I]f the accusatory pleading adequately notifies the defendant that the People will seek to prove the elements of a lesser offense, the court has jurisdiction to convict of that lesser offense although the statutory definition of the lesser crime does not logically compose a part of the greater." (citing *People v. Marshall*, 309 P.2d 456 (1957))).

477 P.2d at 420 (explaining that by entering a plea agreement a defendant "demonstrates that he . . . is prepared to admit each of [the offense]'s elements" but not factual guilt). As a result, unless the record of the plea proceeding reflects that the defendant admitted to facts, a *West* plea, without more, does not establish the requisite factual predicate to support a sentence enhancement.

**[9]** Here, we lack a transcript of Vidal's change of plea hearing or any recordation of the terms of his plea bargain. Although Vidal signed the written plea and waiver of rights form, he wrote only "*People v. West*" in the section requesting a description of "facts as to each charge" to which he was pleading guilty. The form, like the Complaint, therefore fails to establish the factual predicate for Vidal's plea. Because he did not plead guilty "as charged," *see Li*, 389 F.3d at 898, and because we lack a memorialization of the terms of his plea bargain or even a judgment of conviction, the paltry record before the district court does not eliminate the possibility that Vidal was convicted as an accessory after the fact to theft, which we have concluded does not fall within the generic theft offense.[29]

## IV.

**[10]** The district court erred in applying the eight-level enhancement in U.S.S.G. § 2L1.2(b)(1)(C) on the basis of Vidal's 1994 conviction under California Vehicle Code section 10851(a). In contrast to the generic theft offense, which encompasses principals and other similar offenders, section 10851(a)—read in light of California's statutory abolition of accessory before the fact as a separate felon category— necessarily applies to accessories after the fact as well as prin-

---

[29]As discussed above, because section 10851(a) expressly identifies accessories after the fact, the prosecution need not have separately charged Vidal under Penal Code section 32 to have convicted him based on an accessory-after-the-fact theory.

cipals and accomplices; the statute is therefore overly inclusive for purposes of a categorical analysis. Nor, applying the modified categorical approach, does the record confirm that Vidal was necessarily convicted for all the elements of the generic theft offense, in the absence of a transcript of the plea colloquy or any other memorialization of the factual basis for his *People v. West* plea. We therefore vacate the sentence and remand for resentencing.

**VACATED and REMANDED.**

CALLAHAN, Circuit Judge, with whom KOZINSKI, TALLMAN, CLIFTON, BYBEE, and BEA, Circuit Judges, join, dissenting:

I respectfully dissent.

Although I agree that we must apply the *Taylor v. United States*, 495 U.S. 575, 602 (1990), categorical approach and that accessory after the fact liability does not fall within the generic definition of a theft offense, I dissent because the majority fails to understand how California treats accessory after the fact liability. As a result, the majority concludes that the word "accessory" in California Vehicle Code § 10851(a) means that the statute must necessarily include accessory after the fact liability despite a lack of evidence that California has ever interpreted the statute this broadly, and despite ample authority that California mandates prosecution of accessories after the fact under a separate statute, California Penal Code § 32, which is similar to 18 U.S.C. § 3. By doing so, the majority ignores the Supreme Court's admonition, repeated twice last Term, that we consider the practical effects and operations of statutes in the ordinary case under the categorical approach and refrain from speculating about the possible reach of the statute.

I would affirm the district court and hold that a violation of Vehicle Code § 10851(a) is categorically a theft offense for the purposes of the 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C), because Vehicle Code § 10851(a) does not include accessory after the fact liability under California law.

## I.

The majority argues that although the Supreme Court concluded that aiding and abetting liability did not make California Vehicle Code § 10851(a) overbroad under the categorical approach in *Gonzales v. Duenas-Alvarez*, ___ U.S. ___, 127 S. Ct. 815, 820 (2007), the statute is still too broad because it includes accessory after the fact liability. The majority relies entirely upon a single superfluous and ambiguous word from Vehicle Code § 10851(a), and ignores both the California case law narrowly defining the elements required for a conviction and California's treatment of accessory after the fact liability under Penal Code § 32.

### A.  California Vehicle Code § 10851(a) is categorically a theft offense.

As acknowledged by the majority, we apply a "modern, generic definition" that defines a "theft offense" as:

> a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.

*United States v. Espinoza-Cano*, 456 F.3d 1126, 1131 (9th Cir. 2006) (internal quotation marks omitted). We have expressly rejected the Model Penal Code definition that requires an intent to take the property from its rightful owner permanently or for an extended period of time.[30] *United States*

---

[30]The Model Penal Code defines "deprive" as:

  (a) to withhold property of another permanently or for so

*v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc). All circuits that have attempted to define a theft offense have adopted this broader definition and rejected the Model Penal Code approach. *See Nugent v. Ashcroft*, 367 F.3d 162, 174 (3d Cir. 2004); *Jaggernauth v. U.S. Att'y Gen*, 432 F.3d 1346, 1353 (11th Cir. 2005); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001); *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001). The Supreme Court has done the same. *Duenas-Alvarez*, ___ U.S. ___, 127 S. Ct. at 820.

Applying the modern, generic definition of theft offense, the elements of a violation of Vehicle Code § 10851(a) categorically qualify a conviction under the section as a theft offense. California Vehicle Code § 10851(a) states:

> Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a county jail for not more than one year or in the state prison or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment.

---

extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

(b) to dispose of the property so as to make it unlikely that the owner will recover it.

Model Penal Code § 223.0(1).

We must consider "whether the *elements of the offense* are of the type that would justify its inclusion" within a theft offense, *James v. United States*, ___ U.S. ___, 127 S. Ct. 1586, 1594 (2007). All the elements of a theft offense are satisfied by the plain language of Vehicle Code § 10851(a): the intent to deprive the owner of the title or possession of the vehicle, the lack of consent, and the actual taking or driving of the vehicle. *See People v. Moon*, 117 P.3d 591, 606 (Cal. 2005) (stating elements of a violation of § 10851(a) and quoting CALJIC No. 14.36); CALCRIM 1820 (2006) (stating two elements: "1. The defendant took or drove someone else's vehicle without the owner's consent; and 2. When the defendant did so, (he/she) intended to deprive the owner of possession or ownership of the vehicle for any period of time."). Because Vehicle Code § 10851(a), stripped of the excess verbiage and reduced to its basic elements, requires all the basic elements of a theft offense in order to sustain a conviction, it is categorically a theft offense.

## B. Accessory liability does not make § 10851(a) overbroad.

As applied, the word "accessory" in Vehicle Code § 10851(a) means an accomplice. We must heed the Supreme Court's guidelines in *Duenas-Alvarez* stating that:

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.

*Duenas-Alvarez*, ___ U.S. at ___, 127 S. Ct. at 822. Under California law, as under federal law, accessory after the fact liability is a separate and distinct crime that must be alleged, proven, and punished independently of the underlying felony

committed by the principal. As a result, California does not apply Vehicle Code § 10851(a) to accessories after the fact.

Although Vehicle Code § 10851(a) includes the word "accessory," the word has a common law meaning.[2] We cannot theorize that Vehicle Code § 10851(a) creates accessory after the fact liability, particularly when California has defined the statutory elements without any reference to accessory after the fact liability.[3] *See Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (noting "a state is generally free within broad limits to define the elements of a particular offense"). Furthermore, California has chosen to treat accessory after the fact liability as a separate and distinct offense that must be alleged, proven, and punished — exactly as accessory after the fact liability is handled under federal law. Therefore the inclusion of the word "accessory" in the statutory language

---

[2]Prior to the enactment of Penal Code § 971, which abolished the distinction between principals, accomplices and accessories before the fact, the California Penal Code stated that "[a]n accessory is he or she who stands by and aids, abets or assists; or who, not being present aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime." *People v. Schwartz*, 32 Cal. 160, 164 (1867) (quoting Act concerning Crimes § 11). Even after the legislature abolished the common law distinctions between aiding and abetting, accessories before the fact, and principals, the word "accessory" continued to be used to describe accessories before the fact. *See People v. Nolan*, 144 Cal. 75, 78-80 (1904) (discussing pleading requirements for accessories before the fact after amendment to Penal Code § 971); *People v. Outeveras*, 48 Cal. 19, 22-26 (1874) (discussing statutory definition of an accessory).

[3]The majority cites a 1946 case, *People v. Slayden*, 166 P.2d 304, 305 (Cal. Ct. App. 1946), as evidence that California simply gives different jury instructions if the prosecution advances an accessory after the fact theory under Vehicle Code § 10851. The majority fails to recognize, however, that the Los Angeles County Superior Court issued the first set of standardized jury instructions in 1946, and that therefore the trial court in *Slayden* necessarily had to use a jury instruction that mirrored the language of the statute. *See* Robert G. Nieland, *Pattern Jury Instructions: A Critical Look at a Modern Movement to Improve the Jury System*, 7, 74 (American Judicature Society 1979) (discussing history of CALJIC instructions).

does not mean that California could potentially punish accessories after the fact under Vehicle Code § 10851(a).

  1.  California Penal Code § 32 sets forth a crime separate and distinct from the felony itself.

"[I]n California one who is an accessory to a felony thereby commits a crime which is separate and distinct from the felony itself." *People v. Mitten*, 112 Cal. Rptr. 713, 715 (Ct. App. 1974). California has codified this principle in Penal Code § 32, which defines an accessory after the fact as:

> Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

The elements of a violation of Penal Code § 32 are: that a felony was committed, that the defendant "harbored, concealed or aided a principal in that felony with the specific intent that the principal avoid or escape arrest, trial, conviction or punishment"; and that "defendant did so with knowledge that the principal committed the felony." *People v. Magee*, 131 Cal. Rptr. 2d 834, 836 (Ct. App. 2003) (quoting CALJIC No. 6.40); CALCRIM 440 (2006).

For example, for theft offenses, a defendant cannot be convicted as an accessory after the fact for being in possession of goods that he knows are stolen, but must be convicted of being in receipt of stolen property. *See People v. Stakem*, 40 Cal. 599, 601 (1871) (stating that someone who receives property with guilty knowledge that it was stolen is guilty of receiving stolen property and not as an accessory after the fact). Violations of California Penal Code § 32 must be pled and proven, including the identification of the underlying fel-

ony and the person that the defendant allegedly concealed or protected. *See People v. Garnett*, 61 P. 1114, 1115 (Cal. 1900) (reversing and remanding for a new trial because although the information alleged that the principal who defendant concealed committed the crime of grand larceny, it failed to allege that the principal was charged with a felony). "[T]he word 'charged,' as used in the section, means a formal complaint, information, or indictment filed against the criminal . . . ." *Id.* The information must allege the felony that was committed, as well as the defendant's knowledge that a felony was committed and the defendant's intent to harbor or conceal the principal to help him avoid arrest, trial, conviction, or punishment. *See People v. Hardin*, 207 Cal. App. 2d 336, 341-42 (Ct. App. 1962) (discussing elements and the need to allege the felony committed by the principal). In fact, California courts have invalidated a conviction because the information failed to allege each of the elements of a violation of Penal Code § 32. *See People v. Kloss*, 19 P.2d 822, 823 (Cal. Ct. App. 1933) (invalidating information that failed to properly state theory of liability under Penal Code § 32).

Although California abrogated the common law distinction between an accessory before the fact, an accomplice at the scene, and a principal in 1872 by enacting Penal Code § 971,[4] accessories *after the fact* continue to be prosecuted for "a crime separate and distinct from the principal offense" under Penal Code § 32. *Mitten*, 112 Cal. Rptr. at 715. The distinction between accessories before the fact and accessories after the fact is essential because an accessory after the fact can

---

[4]California Penal Code § 971 states:

> The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, who by the operation of other provisions of this code are principals therein, shall hereafter be prosecuted, tried and punished as principals and no other facts need be alleged in any accusatory pleading against any such person than are required in an accusatory pleading against a principal.

only be punished as an unspecified felony rather than as a principal. *See People v. Gassaway*, 28 Cal. 404, 405-06 (1865) (noting distinction between an accessory before the fact and an accessory after the fact because the accessory before the fact is punished as a principal, and an accessory after the fact is punished as a general felony). Under California law, a defendant cannot be convicted of both the substantive felony and as an accessory to the felony unless the two charges are based on different facts. *See People v. Riley*, 25 Cal. Rptr. 2d 676, 679-80 (Ct. App. 1993) (affirming conviction for murder under accomplice liability and as an accessory after the fact where the defendant both accompanied the shooter during the crime and also disposed of the gun the day after the murder); *People v. Prado*, 136 Cal. Rptr. 521, 525 (Ct. App. 1977) (reversing conviction for robbery and accessory to robbery based on single course of action). Accessory after the fact liability is impossible as a matter of law without further acts after the completion of the felony that satisfy each and every element of California Penal Code § 32. *See In re Malcolm M.*, 54 Cal. Rptr. 3d 74, 84 (Ct. App. 2007) (overturning conviction for being accessory to illegal weapons possession when offense was not complete when the defendant was arrested); *Prado*, 136 Cal. Rptr. at 524 ("[W]hen an accused is convicted of [a] violation of Penal Code section 32, which necessarily requires that a *Principal* have committed a specific completed felony and that he knowingly aided that principal with intent that the principal escape arrest, he cannot be convicted as a principal in that completed felony."). Under California law, a conviction as a principal for the substantive offense precludes a conviction for being an accessory after the fact, absent evidence that defendant took further action to harbor a principal after the crime.

> 2. Under California law, being an accessory after the fact to a violation of Vehicle Code § 10851(a) must be prosecuted as a violation of Penal Code § 32.

The conclusion that California requires that the government allege accessory after the fact liability as a separate offense

under Penal Code § 32 is bolstered by the California Court of Appeal's decision in *Dunn v. Superior Court*, 206 Cal. Rptr. 242, 244 (Ct. App. 1984). In *Dunn*, the defendant was initially charged with kidnapping, assault with intent to commit rape, and a violation of Vehicle Code § 10851. *Id.* Although the defendant was held to answer on all charges, the information only included the kidnapping and assault charges. *Id.* The government dismissed the original information on the day of trial, and filed a new complaint charging kidnapping, robbery, possession of stolen property, and a violation of Penal Code § 32, described by the court of appeal as "accessory to kidnaping, robbery and auto theft." *Id.* After a preliminary hearing, "the magistrate refused to hold petitioner to answer on any charge except the charge of being an accessory after the fact as that charge related to auto theft." *Id.* In short, the judge at the preliminary hearing found insufficient probable cause to hold the defendant to answer on any charge except being an accessory after the fact to auto theft. *See* Cal. Penal Code §§ 858-883 (stating procedures for preliminary hearings and probable cause determinations).

After the government filed an information that revived all the counts in the second complaint, the defendant moved to dismiss the kidnapping, robbery, and receiving stolen property counts under California Penal Code § 1387, which bars prosecution for crimes that have been "terminated" twice against a defendant. *Dunn*, 206 Cal. Rptr. at 244. The court of appeal held that charges of auto theft or robbing someone of a vehicle had been terminated twice, and therefore those charges had to be dismissed. *Id.* at 247-48. The accessory to auto theft allegation, however, had not been previously terminated and therefore the prosecutors could proceed on those charges. *Id.* at 247.

The majority now speculates that the "auto theft" referred to in *Dunn* was actually grand theft of an automobile, a violation of Penal Code § 487(d). Majority Op. at 13646 n.24. The majority speculates that because the language concerning

being subjected to two preliminary hearing concerning the theft of the automobile includes a reference to the Penal Code, that the opinion must refer to Penal Code § 487. *Id.* The majority's theory is not only pure speculation in light of the opinion's specific reference to Vehicle Code § 10851(a), but ignores the opinion's specific discussion of its holding that the termination of the auto theft charge under Vehicle Code § 10851(a) and the subsequent termination of a *robbery* charge under Penal Code § 211 constituted the two terminations that precluded further prosecution for the taking of an automobile. *Dunn*, 206 Cal. Rptr. at 247-48 (stating "[h]ere, the essence of the auto theft and robbery is the same since the robbery was specifically alleged to be the taking of the same automobile" and issuing a peremptory writ of mandate to dismiss the robbery count). The court of appeal in *Dunn* specifically stated that, "[a] defendant cannot be expected to move for dismissal of a count not included in the information," and specified the charges, including the robbery count, that were actually in the information. *Id.* at 244, 248. The entire point of the Supreme Court's admonition against reaching for "theoretical possibilities" is to prevent the type of strained interpretation the majority attempts to apply to *Dunn* to read in a connection to Penal Code § 487 or other theories of liability when none exists, or ever existed. *Duenas-Alvarez*, ___ U.S. at ___, 127 S. Ct. at 822.

As demonstrated by the facts in *Dunn*, California courts require prosecutions under an accessory after the fact theory of liability to be brought under Penal Code § 32, even if the underlying offense is a violation of Vehicle Code § 10851(a). Charges under Penal Code § 32 are treated as independent allegations and violations. Therefore, there is no need to discuss theoretical possibilities, or even realistic probabilities, about the extent of liability under California Vehicle Code § 10851 because the existence of Penal Code § 32 and the case law showing that California uses it to prosecute accessories after the fact when the underlying felony is a vehicle theft is sufficient to show that Vehicle Code § 10851(a) is not cate-

gorically overbroad. *See* Cal. Penal Code § 32; Cal. Penal Code § 972; *Duenas-Alvarez*, ___ U.S. at ___, 127 S. Ct. at 822; *Garnett*, 61 P. at 1115.

We recently recognized that because Penal Code § 32 is a separate and distinct offense, convictions for the substantive offense do not include accessory after the fact liability for the purposes of the categorical test under *Taylor*. *United States v. Gomez-Mendez*, 486 F.3d 599, 605 (9th Cir. 2007) (rejecting argument that a conviction for statutory rape under Penal Code § 261.5 is overbroad because it includes accessory after the fact liability). As a result, we concluded that a prior conviction for a substantive offense "could not be based on liability for acting as an accessory *after* the fact." *Id.* (emphasis in original).

This position is consistent with our treatment of accessory after the fact liability under 18 U.S.C. § 3 when applying the categorical approach in *Olivera-Garcia v. INS*, 328 F.3d 1083, 1086 (9th Cir. 2003). In that case, we noted that a conviction under 21 U.S.C. § 841(a)(1) was "under the controlled substances statute, not under the accessory after the fact statute." Because the judgment stated that the petitioner was convicted of violating the substantive drug statute, and not 18 U.S.C. § 3, language in the judgment stating that he was convicted of being an accessory after the fact to the manufacture of methamphetamine did not alter the statute of conviction. *Id.* Therefore, for the purposes of the categorical approach, the existence of a separate and distinct crime of being an accessory after the fact precludes inclusion of accessory after the fact liability as part of the statutory definition of the substantive offense.

> 3. California's treatment of accessory after the fact liability is equivalent to liability under 18 U.S.C. § 3.

The federal accessory after the fact statute, 18 U.S.C. § 3, states in relevant part, "[w]hoever, knowing that an offense

against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."**5** In order to sustain a conviction under 18 U.S.C. § 3, the government must prove that a felony was committed, that the defendant had actual knowledge of the principal's participation in the felony, and that the defendant assisted the principal in order to hinder or prevent the apprehension, trial, or punishment of the principal. *See Hiram v. United States*, 354 F.2d 4, 6 (9th Cir. 1965) (discussing the "three essential elements" of 18 U.S.C. § 3). It is well established in this circuit that 18 U.S.C. § 3 is "a separate and distinct crime" just like a violation of Penal Code § 32.**6** *United States v. Jackson*, 448 F.2d 963, 971 (9th Cir. 1971).

As a result, an accessory after the fact cannot be convicted as a principal on the same set of facts as a matter of law. *See United States v. Taylor*, 322 F.3d 1209, 1212 (9th Cir. 2003) (concluding that, "[a]lthough the evidence is sufficient to show that Taylor violated the plain language of the accessory after the fact statute, the statute does not apply to Taylor

---

**5**The remainder of 18 U.S.C. § 3 states:

> Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years.

**6**In addition, "the offense of being an accessory *after* the fact is clearly different from aiding and abetting," because an accessory after the fact does not aid in the commission of the underlying offense or agree to commit the crime. *United States v. Innie*, 7 F.3d 840, 852 (9th Cir. 1993); *see also United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) (concluding that aiding and abetting is a theory of liability, not a separate offense); *Londono-Gomez v. INS*, 699 F.2d 475, 476-77 (9th Cir. 1983) (concluding that because aiding and abetting is not a separate offense, an indictment relying on aiding and abetting liability must include an indictment for a substantive offense).

given that he was found guilty as a principal to the crime"). For example, although a participant in the escape phase of a crime may technically satisfy the plain language of 18 U.S.C. § 3, because the escape phase of the crime "is still part of the commission of the crime," a defendant cannot be punished as an accessory after the fact.[7] *Id.* California law treats the escape or get-away phase exactly the same under Penal Code § 32 as the federal courts interpret 18 U.S.C. § 3.[8] *See People v. Mitchell*, 228 Cal. Rptr. 286, 291-92 (Ct. App. 1986)

---

[7]Because I conclude that a violation of Vehicle Code § 10851(a) is categorically a theft offense, I do not reach the modified categorical approach. I do note for the record, however, that nothing in the complaint suggests that Vidal was an accessory after the fact to a principal as required under any theory of accessory after the fact liability. *See Prado*, 136 Cal. Rptr. at 524 (noting necessity of a principal in order to be an accessory after the fact). "California has long recognized that a principal to a felony cannot become an accessory to that felony by attempting to make his own escape." *In re Eduardo M.*, 44 Cal. Rptr. 3d 875, 880 (Ct. App. 2006) (collecting cases). The majority's conclusion that a complaint that does not name any principal that Vidal allegedly concealed, harbored, or aided violates "the common law rule that principals cannot be accessories to their own felonies." *Id.*

[8]*People v. Magusin*, 7 P.2d 764, 765 (Cal. Ct. App. 1932), is distinguishable because it sustained a conviction for aiding and abetting the theft, the theory approved by the Supreme Court in *Duenas-Alvarez*. I have a difficult time figuring out how a case revolving around whether the car connected to the defendant was actually the victim's car can be interpreted as approving of a conviction under an accessory after the fact theory without any discussion of the defendant's state of mind, knowledge, or acts to harbor the perpetrator. *See id.* Given that the defendant in *Magusin*: drove a car accompanying the car his brother stole a short time after the car was taken, a short distance from where the car was stolen, participated in an act showing that he intended to deprive the owner of possession by exchanging the tires, and placed the original tires in the getaway car; an interpretation that defendant was aiding and abetting the continuing theft of the car is more consistent with California case law than an interpretation that the defendant was acting as an accessory after the fact of a completed auto theft. *See People v. Kehoe*, 204 P.2d 321, 324 (Cal. 1949) (requiring evidence of a substantial break between the taking and use of an automobile to sustain separate convictions for taking and driving the car); *People v. Mitchell*, 228 Cal. Rptr. at 291-92.

(refusing to impose accessory after the fact liability on defendant aiding and abetting escape from a robbery). The treatment of accessory after the fact liability under California Penal Code § 32 should be the same as the treatment of accessory after the fact liability under 18 U.S.C. § 3. In both the federal system and under California law, accessory after the fact liability must be separately alleged, proven, and punished. Therefore, there is no legitimate basis for holding that California law treats accessory after the fact liability differently from federal law.

## C.    Joyriding falls within the generic definition of a theft offense.

Vidal advances an alternative argument that Vehicle Code § 10851(a) is not categorically a theft offense because it includes joyriding. At the time Vidal entered his plea, California had a separate joyriding statute, Penal Code § 499b, which read in pertinent part:

> Any person who shall, without the permission of the owner thereof, take any automobile, bicycle, motorcycle, or other vehicle or motorboat or vessel, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . . .[9]

The distinction between Vehicle Code § 10851(a) and the joyriding statute was that the joyriding statute required the intent to use or operate the vehicle without the permission of the owner, while "one could conceivably 'take' a vehicle in violation of section 10851 without the purpose of using or operat-

---

[9]California amended Penal Code § 499b in 1996 to restrict its application to bicycles, motorboats or vessels. Ch. 660, § 1, 1996 Cal. Stat.. The reason for the amendment was "to clarify and streamline existing law by deleting provisions in Section 499b of the Penal Code that are generally duplicative of provisions in subdivision (a) of Section 10851 of the Vehicle Code." *Id.* § 3.

ing it in violation of section 499b." *People v. Barrick*, 654 P.2d 1243, 1255-56 (Cal. 1982). Section 499b prohibited not only "the taking of the automobile without permission," but also required "that the taking be 'for the purpose of temporarily using or operating the same.' " *People v. Howard*, 66 Cal. Rptr. 2d 849, 852 (Ct. App. 1997).

For the purposes of analyzing whether or not Vehicle Code § 10851(a) is categorically a theft offense, however, the distinction should not have any effect on our analysis.[10] By adopting the generic definition of a theft offense, even temporary deprivations of the rights and benefits of ownership are categorically theft offenses. *Espinoza-Cano*, 456 F.3d at 1131. To be convicted of joyriding in violation of section 499b, one must still deprive the owner of the rights and benefits of ownership without his or her consent. *See People v. Frye*, 34 Cal. Rptr. 2d 180, 184-85 (Ct. App. 1994) (discussing elements of the crime and CALJIC 16.305). By definition, joyriding deprives the owner of the use of his car. *See People v. Allen*, 984 P.2d 486, 490 (Cal. 1999) (noting that temporarily depriving owner of possession of a car is "joyriding").

Whether or not joyriding is de minimus also should not affect our decision of whether or not the temporary deprivation of the owner's rights of ownership is categorically a theft offense. Such speculation regarding the facts of the case is not allowed under the categorical approach. *See Duenas-Alvarez*, ___ U.S. at ___, 127 S. Ct. at 822. I would conclude that because joyriding satisfies the generic definition of a theft offense, Vehicle Code § 10851(a) is not overbroad.

---

[10]Although the California courts have concluded that a violation of 499b is not necessarily a lesser included offense of a violation of Vehicle Code § 10851(a), they have concluded that when a defendant is charged with "driving and taking" a car, it becomes a lesser included offense. *See People v. Moon*, 117 P.3d 591, 607 (Cal. 2005) (discussing application of the accusatory pleading test to Vehicle Code § 10851(a) and Penal Code § 499b).

## II.

We must heed the Supreme Court's instructions in *Duenas-Alvarez* and apply accessory liability in a manner consistent with how California actually interprets and implements accessory liability under Vehicle Code § 10851(a) and Penal Code § 32. Vidal's judgment of conviction was for violating Vehicle Code § 10851(a). In order to sustain a conviction for violating Vehicle Code § 10851(a), the government was required to prove that "1. The defendant took or drove someone else's vehicle without the owner's consent; and 2. When the defendant did so, (he/she) intended to deprive the owner of possession or ownership of the vehicle for any period of time." CALCRIM 1820. Accessory after the fact liability is not part of the statutory definition of liability under Vehicle Code § 10851(a) because California has created a separate and distinct crime for being an accessory after the fact by enacting Penal Code § 32.

Vidal was convicted of a substantive offense under Vehicle Code § 10851(a). Therefore, as a matter of law, he could not be prosecuted as an accessory after the fact to the substantive offense, absent additional conduct of helping a principal after the crime. *See Riley*, 25 Cal. Rptr. 2d at 679-80. As a result, I would conduct a simple inquiry into "whether the conduct encompassed by the elements of the offense, in the ordinary case," *James*, ___ U.S. at ___, 127 S. Ct. at 1597, is a theft offense and would conclude that Vehicle Code § 10851(a) satisfies the generic definition of a theft offense adopted by this court. Because Vidal's prior conviction for violating Vehicle Code § 10851(a) is categorically a theft offense, I would affirm the 8-level enhancement applied under U.S.S.G. § 2L1.2(b)(1)(C).

KOZINSKI, Circuit Judge, with whom Judges CLIFTON, BYBEE and CALLAHAN join, dissenting:

The Supreme Court just this Term instructed us that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination." *Gonzales* v. *Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007). Rather, "[i]t requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (emphasis added).

Vidal argues that the statute under which he was convicted, Cal. Veh. Code § 10851, is broader than the generic definition of "theft offense" because it purports to punish individuals who are merely accessories after the fact. But he cannot point to his own case, nor to any other case in the 84-year history of the statute, where the state has applied section 10851 in such an idiosyncratic manner. On its face, this case seems squarely controlled by *Duenas-Alvarez*.

The complicating factor—and the fulcrum of the majority's analysis—is our intervening en banc opinion in *United States* v. *Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), which the majority reads as creating an exception to the *Duenas-Alvarez* mode of analysis for those situations where "a state statute explicitly defines a crime more broadly than the generic definition," *id.* at 850. In such situations, we explained, "no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." *Id.* (citation omitted). But it's not clear that *Grisel* relieves a defendant from his obligation to point to actual cases where the state has applied the statute beyond the generic definition. In the para-

graph immediately following the one the majority relies on, *Grisel did* comply with *Duenas-Alvarez* by citing cases where the state had applied the statute literally and broadly. *Id.* at 850-51.

Assuming that *Grisel* does create a "plain language" exception to *Duenas-Alvarez*, that exception must be read narrowly, lest it swallow up the rule. In other words, *Grisel*'s exception should apply only to statutes that are capable of no other rational interpretation. The statute in *Grisel* was a model of such clarity: Not only did it specify that it covered booths, vehicles, boats and aircraft, but it also expressly recognized that, in so doing, it was augmenting the ordinary meaning of "building." *Id.* at 850 (citing Or. Rev. Stat. § 164.205(1)). *Grisel* thus plausibly concluded that "[t]he [state] legislature expressly recognized the ordinary, generic meaning of burglary and *consciously defined second-degree burglary more broadly* by extending the statute to non-buildings." 488 F.3d at 850 (emphasis added).

Read narrowly, faithful to its own mode of analysis, *Grisel* can be reconciled with *Duenas-Alvarez*. Where it's clear from the statutory text that the legislature consciously defined the crime more broadly than the generic definition, we can say with confidence that "a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." *Id.* at 850. The majority here does not read *Grisel* narrowly, and dramatically departs from *Grisel*'s mode of analysis. There is nothing in section 10851 to suggest that the legislature "consciously defined" car theft to include accessories after the fact. Notably, the statute does not say "accessory after the fact," but only "accessory." "Accessory" could refer to accessory after the fact, but it could equally well mean accomplice.

To reach its conclusion that section 10851 "explicitly" covers accessories after the fact, the majority exercises plenty of "legal imagination;" it imputes to the state legislature con-

scious awareness of legal developments over the prior half century, maj. op. at 13639, and leans hard on the presumption that the legislature would not have written a statute using redundant language, *id.* at 13640. Both the imputation and the presumption are weak, as we know very well that legislatures are not omniscient and that they do, on occasion, use redundant language. That avoiding redundancy was not high on the list of legislative priorities is manifest from the last sentence of the section as enacted in 1923:

> *Any person who assists in*, or *is a party* or accessory to or an accomplice in, any such stealing or unauthorized taking or driving, shall also be deemed guilty of a felony.

Ch. 226, § 146, 1923 Cal. Stat. 564, 564 (emphasis added) (codified as amended at Cal. Veh. Code § 10851(a)). A "party" is a principal or an accomplice, more likely the latter. Either way, the term does no useful work, as it duplicates the phrase "[a]ny person who shall drive a vehicle not his own without the consent of the owner thereof," which is a few lines above, or the word "accomplice," which is just six words below. *Id.* But it gets worse: The sentence opens with the phrase "[a]ny person who assists in." *Id.* What conceivable purpose could *that* language serve that wasn't already satisfied by "accomplice," "accessory" or "party"?

Nor did this legislature seem to worry much about overlap with other statutes, or it would have omitted the entire sentence quoted above. After all, California already had laws imposing liability on accomplices and accessories. Cal. Penal Code §§ 31, 32; *see People* v. *Garnett*, 61 P. 1114, 1115 (Cal. 1900). If the 1923 legislators were aware of these provisions, as the majority assumes they must have been, and sought to avoid redundancy, as the majority supposes they did, why would they have added a sentence dealing with nothing but accomplices and accessories? It strikes me as more than a little strained to rely on the rule against legislative redundancies

in construing statutory language that is a smorgasbord of redundancy, repetition, superfluity, duplication and redundancy.

At most, the majority has shown that including accessories after the fact within the sweep of section 10851 is *a* plausible reading of the statute. But Judge Callahan's dissent offers a reading that is at least as plausible. In these circumstances, we cannot say that the state legislature made the kind of conscious choice to broaden the statute that was at the heart of *Grisel*, and we therefore cannot hold that the statute's "plain" language creates a "realistic probability" the state will apply it to accessories after the fact. Because Vidal cannot point to a single case where the statute has been applied to an accessory after the fact, he hasn't met his burden of showing a "realistic probability" that California would so apply it. *Duenas-Alvarez*, 127 S. Ct. at 822. By giving *Grisel* a very broad reading, divorced from its animating rationale, the majority sets us back exactly where we were before the Supreme Court corrected our error in *Duenas-Alvarez*. It took us only about 9 months.

I also agree with Judge Callahan that section 10851 is a "theft offense" for purposes of U.S.S.G. § 2L1.2(b)(1)(C), even though it unquestionably covers joyriding—that is, the temporary unauthorized use of someone else's vehicle without an intent to permanently deprive the owner of possession or ownership. *See, e.g.*, *In re Derec M.*, 2007 WL 1300540 (Cal. Ct. App. May 3, 2007) (mem.) (juvenile violated section 10851 when he drove parents' car to mall and then returned it). We are bound by the generic definition of "theft offense" that we adopted in *United States* v. *Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc), and that has also been adopted by other circuits and the Supreme Court in *Duenas-Alvarez*:

> [T]he taking of property or an exercise of control over property without consent with the criminal

> intent to deprive the owner of rights and benefits of ownership, *even if such deprivation is less than total or permanent*.

*Duenas-Alvarez*, 127 S. Ct. at 820 (emphasis added) (quoting *Penuliar* v. *Gonzales*, 435 F.3d 961, 969 (9th Cir. 2006)).

Under this definition, a defendant need not intend to permanently deprive the rightful owner of the property altogether in order to be guilty of a generic theft offense. It is enough if he intends to temporarily deprive the owner of "rights and benefits of ownership." Someone who drives off with another person's vehicle certainly intends to deprive the owner of *some* of the rights and benefits of ownership—at the very least, his right to uninterrupted use and possession of the vehicle. Driving the vehicle without authorization also exposes the owner to serious risks, which—even if they do not come to pass—further interfere with his incidents of ownership. Joyriding risks damage to the vehicle, which would cause a very serious, possibly permanent, deprivation of the owner's rights and benefits. The owner also risks liability for injuries or damage the stranger causes while joyriding. Moreover, while the vehicle is out being joy-ridden, the owner cannot use it himself, which may cause him distress and annoyance, may require him to obtain substitute transportation (a taxi or rental vehicle) and may prevent him from reaching his destination on time. Joyriding thus seems to fall squarely within a straightforward application of the generic definition of a theft offense.

Defendant and amicus, Duenas-Alvarez, nevertheless argue that joyriding is different because the joyrider not only deprives the owner of his rights temporarily, but also *intends* the deprivation to be temporary from the start. Amicus describes this as "glorified borrowing." However, the fact that the defendant intends to deprive the owner of his rights only temporarily does not necessarily mean that the deprivation will be so limited. What is intended to be only a temporary

deprivation may very well result in serious and permanent losses to the owner, both monetary and psychological. Not knowing that the vehicle will be returned, the owner will have to make other arrangements, call the police to report the loss and, ultimately, might regain the vehicle damaged, dirty and low on gas—conditions that will require time and money to remedy. Doubtless for these reasons, a substantial majority of the states label joyriding as "theft," as demonstrated by the helpful compilation of state statutes provided by the government in its brief. Appellee United States' Supplemental Brief on the Application of Gonzales v. Duenas-Alvarez at 32 n.17.

For these reasons, and those stated by Judge Callahan in her persuasive dissent, I would affirm the district court's imposition of defendant's sentencing enhancement.